Michael D. Meuti (CA 227939)
BENESCH, FRIEDLANDER,
    COPLAN & ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
mmeuti@beneschlaw.com

David M. Hopkins (*Admitted Pro Hac Vice*)
BENESCH, FRIEDLANDER,
    COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216.363.4500
dhopkins@beneschlaw.com

Corena G. Larimer (CA 277188)
ANTI-DEFAMATION LEAGUE
40 Court Street, Suite #12
Boston, MA 02108
Telephone: 212.885.7700
clarimer@adl.org

James Pasch (*Admitted Pro Hac Vice*)
Brendan Hogan (*Admitted Pro Hac Vice*)
ANTI-DEFAMATION LEAGUE
605 Third Avenue
New York, NY 10158
Telephone: 212.885.7700
jpasch@adl.org
bhogan@adl.org

*Attorney for Plaintiff Michael Radice*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL RADICE, | Case No. 3:25-cv-02060 |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO GLENN KATON'S ADMINISTRATIVE MOTION TO WITHDRAW AS COUNSEL FOR DEFENDANTS** |
| v. | |
| JERUSALEM BOXING CLUB, LLC; NATIVE GROUNDS, INC.; ABDULRAHIM HARARA; DOES 1-20 | |
| Defendants. | |

## I.    <u>INTRODUCTION</u>[1]

Mr. Katon's request to withdraw from this case comes after months of Defendants' delaying and evading their discovery obligations—deficiencies that Defendants have yet to remedy. Allowing counsel to withdraw before Defendants fix these issues will effectively reward them for shirking their obligations.

Under the four factors that this Court considers on a request to withdraw, an immediate, no-strings-attached withdrawal is improper. Mr. Katon's conclusory motion offers virtually no reason at all for why he believes that withdrawal is necessary. And the available facts suggest that Defendants' lack of compliance with discovery obligations is a motivating factor. A condition-free withdrawal threatens prejudice to Plaintiff Mike Radice, to the administration of justice, and to the Court's scheduling order.

Accordingly, and as explained more fully below, the Court should not permit Defendants' counsel to withdraw until at least five things happen:

1.    Mr. Harara makes clear to the Court at the February 27 Further Case Management Conference that he understands the implications of Mr. Katon's potential withdrawal and his obligations to comply with the Rules.

2.    Defendants provide a complete and accurate accounting of their efforts to preserve, collect, and produce relevant, responsive ESI and documents.

3.    Defendants remedy existing discovery deficiencies.

4.    Defendants submit their electronic devices and online platforms for forensic preservation.

5.    Defendants agree to abide by the existing case schedule, or one that extends existing deadlines by only two weeks.

In addition, following withdrawal, Plaintiff requests that the Court apply Civil Local Rule 11-5(b)'s provision to require Mr. Katon to accept service of papers for Defendants until new counsel appears.

---

[1] During the February 13, 2026 CMC, the Court ordered briefing on Mr. Katon's proposed withdrawal and indicated that the styling of the brief (administrative motion or otherwise) was secondary. From that exchange, Plaintiff understands that Civil Local Rule 7-11(b)'s five-page limit does not apply. If Plaintiff has misunderstood the Court's instruction, Plaintiff requests leave to file this brief in excess of that page limit or, in the alternative, to amend his response.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff sued defendants for public-accommodation discrimination.

This is a straightforward case.  It addresses several antisemitic incidents at Jerusalem Coffee House ("JCH"), a café in Oakland that has refused to serve at least two customers because they are Jewish. Defendant Abdulrahim Harara is the proprietor of JCH and, in separate incidents in August 2024 and October 2024, ejected customers after identifying each as Jewish.  Mr. Harara is the sole owner of Defendant Jerusalem Boxing Club, LLC ("JBC") and Defendant Native Grounds, Inc., and he operates the coffee shop through one or both of these corporate entities.

Plaintiff Michael Radice is one of the individuals subjected to antisemitic harassment and refusal of service by Defendants.  He was accosted by a JCH employee because his hat bore a Star of David icon and Hebrew text, and he was accused of being responsible for "killing children" and other antisemitic invective. (Dkt. 18, First Am. Compl. ¶ 43–44.)  Later, Mr. Harara and other coffee shop employees ejected Mr. Radice from JCH, declaring: "**You're the Jew. You're the Zionist. We don't want you in our coffee shop. Get out.**"  (*Id*. ¶ 52 (emphasis added).)

Mr. Radice brought this suit to obtain injunctive, monetary, and declaratory relief under state and federal civil-rights laws.  His claims necessitate discovery into Defendants' business practices, Defendants' anti-Jewish animus, and other antisemitic incidents involving JCH, Mr. Harara, or other Defendants.  Despite the straightforward nature of this case, its progress has repeatedly been delayed.

### B.    Defendants have refused to comply with their document-discovery obligations.

For nearly six months now, Plaintiff has worked to obtain discovery into the café's relevant business records and Defendants' anti-Jewish animus, including antisemitic communications and social-media posts.  Plaintiff served RFPs and RFAs on August 29, 2025.  Four days before the response deadline, Defendants asked for an extension to serve responses, which Plaintiff granted.  Plaintiff served Interrogatories on November 3, 2025.  Defendants served their responses to the RFPs and RFAs on October 14, 2025,  and to the Interrogatories on December 10, 2025. Defendants served supplemental Interrogatory responses on December 29, 2025.  Defendants served document productions on October 28, 2025, November 4, 2025, December 29, 2025, January 16, 2026, January 28, 2026, and February 16, 2026.

Plaintiff initiated the meet-and-confer process on December 15, 2025, with a 26-page letter detailing the deficiencies in Defendants' responses and requesting a meeting. Counsel for all parties met and conferred by videoconference on December 19, 2025, January 9, 2026, February 2, 2026, and February 9, 2026. While those conferences resolved some issues, many remain outstanding today. These include Defendants' (1) refusal to produce relevant financial records, (2) failure to search for and produce documents, emails, text messages, social media information, and financial information, and (3) decision to rely on Mr. Harara to search for and collect documents himself without adequate oversight from counsel and without hiring a vendor. The latter issue has resulted in significant gaps in the production, including production of truncated text messages divorced from any context. (*See, e.g.*, **Ex. A**. DEFS0318)

During the January 9 meet-and-confer, Defendants' counsel admitted that his clients had not searched their social-media accounts for responsive documents. (**Ex. B.**, Decl. of Michael D. Meuti ["Meuti Decl."] ¶¶ 2–3.) He contended that they believed that no responsive documents existed, including no social-media posts that mentioned another Jewish person that JBC had ejected from the café. (*Id.* ¶ 4.) Plaintiff's counsel then read him a social-media post from X (formerly Twitter) that Mr. Harara reposted to his feed stating that Jonathan Hirsch, another Jewish man suing Defendants Harara and Native Grounds for antisemitic discrimination after also being ejected from the cafe, "is a genocidal, bottom dwelling Zionist scum and should be kicked out of every public establishment not just Palestinian owned ones!" (*Id.* ¶ 5.) As of January 15, that post disappeared from Defendant Harara's X feed. (*Id.* ¶ 6.) Plaintiff's counsel raised the apparent spoliation with Defendants' counsel by email on January 29. (*Id.* ¶ 7.) The post then reappeared. (*Id.* ¶ 8.)

Plaintiff filed a discovery-dispute letter on February 12, 2026 on several of these issues while waiting for Defendants' promised supplemental production using agreed-upon keywords. (Dkt. 68.) That production never came. Mr. Katon said he does not "know if there will be any additional production," and Defendants now assert a "right" not to produce Mr. Harara's nonprivileged communications or financial documents. (Dkt. 69.)

### C. Defendants have refused to cooperate in scheduling depositions.

In the meanwhile, Defendants also refused to comply with their obligation to work in good faith

to schedule depositions, which Plaintiff's counsel has attempted to do in coordination with counsel for the United States in the related case brought by the government. (*See* Case No. 3:25-CV-04849-SI.) Plaintiff initially sought an early January deposition date for Mr. Harara but was told that he was unavailable until late January due to an extended trip outside the United States. In early January, the parties tentatively scheduled Mr. Harara's deposition for the week of January 26. Defendants' failure to produce relevant, responsive documents made that date unworkable.

On January 14, 2026, Plaintiff requested deposition dates for early-to-mid February to allow Defendants to serve more-complete document productions before deposition. Defendants' counsel responded that he was unavailable the first week of February, did not wish to hold depositions the second week of February when counsel for the United States in the coordinated case was not available, and that Ramadan began the third week and would limit his clients' availability. Defendants' counsel proposed that depositions proceed in half-day increments to accommodate his clients' fasting, and that they occur only on Mondays or on weekends to accommodate the café's hours. After multiple meet-and-confers, the parties agreed in principle to schedule Defendants and a JBC employee for depositions on February 25, 26, and 27. But Defendants walked back that agreement, refusing to proceed unless the first day of depositions was a Monday. Now, they assert (without any support) a right not to be deposed at all during the month of Ramadan. (Dkt. 69.)

D.    **Defendants' dilatory tactics have undermined the schedule, and these discovery disputes remain unresolved.**

The parties held their fourth videoconference on February 9, 2026, to continue to address the financial discovery, lack of production of social-media posts and other electronic communications, and deposition-scheduling issues. Plaintiff's counsel followed up by email on February 9, 2026. Defendants responded the next day. They rejected Plaintiff's latest proposed deposition dates and offered no definitive date by which they expected to complete their supplemental productions. That process culminated in the February 13, 2026 discovery dispute letter. (*See* Dkt. 68.)

What is more, Defendants' resistance to discovery has already necessitated changes to the case schedule. Plaintiff sought to depose Mr. Harara in January, but had to postpone because of the document

discovery deficiencies.  In turn, that led to a stipulated revision of the case schedule, extending discovery deadlines and requiring future discussion on revising this case's pretrial and trial dates.  (*See* Dkt. 61.)

Defendants' discovery responses and productions remain deficient.  Defendants have not agreed to rectify those deficiencies, much less to do so by a date certain.

## III.    LAW AND ARGUMENT

Civil Local Rule 11-5 governs an attorney's efforts to withdraw from representation.  Withdrawing counsel must obtain leave of court, inform their client, and notify the other parties.  *Id.*  The Northern District applies the California Rules of Professional Conduct (hereinafter "CRPC") in evaluating withdrawal motions.  *See Penson & Co. LLC v. Cloudstyle Store*, No. 20-CV-05174-JST, 2024 WL 497156, at *2-3 (N.D. Cal. Feb. 8, 2024) (noting that counsel must comply with California Rules of Professional Conduct when seeking to withdraw from a case).  In turn, CRPC Rule 1.16(d) requires counsel to give the client time to retain new counsel, and to avoid reasonably foreseeable prejudice to the client.  Where withdrawal does not come with a simultaneous substitution of counsel, the Court may condition leave on counsel agreeing to receive and forward papers in the case until the party retains new counsel.  *See* N.D. Cal. L.R. 11-5(b).

Further, courts consider four factors relevant to a request to withdraw: "1) the reasons why withdrawal is sought; 2) the prejudice withdrawal may cause to other litigants; 3) the harm withdrawal might cause to the administration of justice; and 4) the degree to which withdrawal will delay the resolution of the case."  *Harmon v. Nelson*, No. 19-CV-01192-SI, 2022 WL 254344, at *5 (N.D. Cal. Jan. 27, 2022) (Illston, J.) (quoting *Canandaigua Wine Co. v. Edwin Moldauer*, 2009 WL 89141, at *1 (E.D. Cal. Jan. 14, 2009) (internal quotation marks omitted)).  The court may deny leave if it would prejudice other parties or cause delay in the case. *See, e.g., Penson*, 2024 WL 497156, at *4 (barring withdrawal that "may cause prejudice to other litigants" and may delay the case's resolution); *Darby v. City of Torrance*, 810 F.Supp. 275, 276 (Bankr. E.D. Cal. 1992) (barring withdrawal "that will cause delay in prosecution of the case to completion") (quoting then-C.D.Cal. L.R. 2.8.2.4).

Moreover, as this Court has acknowledged, business entities may not represent themselves in federal court.  *See, e.g.,* N.D. Cal. L.R. 3-9(b) (providing that a corporation can appear only through

6

**Plaintiff's Response to Glenn Katon's Administrative Motion to Withdraw as Counsel for Defendants
Case No. 3:25-cv-02060**

counsel); *Nemetona Trading Ltd. v. Kurt Orban Partners, L.L.C.*, No. 14-CV-03284-SI, 2015 WL 1967401, at *4 (N.D. Cal. May 1, 2015) (Illston, J.) (finding that the plaintiff "is a corporation, and therefore must be represented by counsel to appear in federal court"). *See also Laskowitz v. Shellenberger*, 107 F. Supp. 397 (S.D. Cal. 1952) (denying motion to withdraw because corporation lacked substitute counsel). Where a corporation's counsel withdraws without substitution, that corporation is subject to default "for failure to comply with local rules requiring representation by counsel." *See Employee Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 998 (9th Cir. 2007) (citing *United States v. High County Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam)).

A.    **Mr. Katon's proposed immediate withdrawal flunks the four-factor test.**

Mr. Katon's motion proposes an immediate, no-strings-attached withdrawal. That proposal satisfies none of the four factors that this Court recognized and applied in *Harmon v. Nelson*. Allowing an immediate, unconditional withdrawal threatens to prejudice Plaintiff, impede the administration of the case, and delay litigation progress and the case's ultimate resolution.

**Reason for Withdrawal:** Mr. Katon's withdrawal motion is more significant for what it does not say than for what it does. The reasons for withdrawal are so conclusory and unsupported that they hardly qualify as reasons at all. The motion mentions "a breakdown in the attorney-client relationship," but never says what events or issues occasioned that breakdown. (Dkt. 71.) And it mentions "a material breach of the attorney-client retention agreement," but offers no detail explanation of about that basis, either. (*Id.*) The supporting declaration offers provides only the same conclusory statements. (Dkt. 71-1 at ¶¶ 2–3.)

The Court and Plaintiff are left to speculate as to Mr. Katon's rationale for requesting to withdraw. His opaque statements come on the heels of Defendants' failures to meet discovery obligations and suggest that Defendants are refusing to take Mr. Katon's advice. Perhaps the most glaring evidence pointing in this direction is the *Anders* letter that Mr. Katon filed in response to Plaintiff's notice of discovery dispute statement. (Dkt. 69.) That letter—which Mr. Katon filed after informing Plaintiff's counsel (a) that he had nothing to offer in response to their statements in the joint-discovery-dispute letter (Dkt. 68), and (b) that he intended to move to withdraw—contradicts positions that Mr. Katon had previously taken during the parties' meet-and-confer efforts, asserting for the first time "rights" not to be deposed during Ramadan

7

**Plaintiff's Response to Glenn Katon's Administrative Motion to Withdraw as Counsel for Defendants
Case No. 3:25-cv-02060**

and not to produce relevant text messages and financial information.  And it offers no authority to support Defendants' newly asserted "rights" not to be deposed during Ramadan and not to produce relevant text messages and financial information.  No wonder it is bereft of support.  The case that the letter cites, *Anders v. California*, 386 U.S. 738 (1967), establishes an appointed lawyer's obligations to file an appeal on behalf of his client even when the lawyer believes that the arguments are wholly frivolous.  That context suggests that Defendants have refused to cooperate in discovery obligations despite Mr. Katon's best efforts to goad them into complying with his advice on their obligations as a party before this Court.

That context militates against allowing an immediate withdrawal.  Unwillingness to abide by their obligations under the Federal Rules of Civil Procedure may support sanctions against a party, but it does not support counsel's immediate withdrawal.

**Prejudice to Plaintiff:**  An immediate withdrawal will tangibly prejudice the Plaintiff.  Already, as noted above, Defendants have evaded their discovery obligations.  Mr. Katon's withdrawal would exacerbate that problem, as the novel "rights" asserted in his *Anders* letter illustrate.  Rather than obtain relevant responsive documents that will allow this case to progress, Plaintiff will likely face serial baseless objections asserting Defendants' fabricated "rights" not to participate in discovery.

That threat is especially acute for three reasons.  *First*, even during the period that Mr. Katon has been involved, Defendants have failed to properly preserve, search for, collect, and produce relevant documents and information.  There is no reason to believe that situation will improve without oversight and direction from counsel.  *Second*, the episode with the disappearing and reappearing X post suggests that Mr. Harara may have already attempted to hide or destroy evidence before Mr. Katon intervened.  And *third*, Mr. Katon's motion and supporting declaration say nothing about Defendants' efforts to obtain new counsel, and Mr. Katon suggested at the February 13, 2026 Case Management Conference that Defendants have made no progress in obtaining new counsel.  This suggests that Defendant Harara, the principal of corporate Defendants JBC and Native Grounds, may seek to represent himself for some period of time, though Local Rule 3.9(b) prohibits the corporate Defendants from doing so.

**Harm to the Administration of Justice:**  Just as an immediate withdrawal would invite Defendants to further flout their discovery obligations, so also would it invite them to undermine the

administration of justice.  Again, the *Anders* letter shows that Defendants would prefer to make up new "rights" than to abide by the Federal Rules and Local Rules, as Local Rule 3.9(a) would require.[2]  Without an attorney guiding the Defendants and ensure their compliance with this Court's requirements, they may undermine the integrity of this proceeding.

**Delay of Ultimate Resolution:**  The foregoing shows that an immediate withdrawal will likely send discovery in this case off the metaphorical rails, pushing all remaining deadlines further into the future.  That concern is particularly acute because the corporate Defendants cannot proceed without counsel.  And although Mr. Katon's withdrawal motion does not mention it, he stated during the February 13, 2026 CMC that Defendants will seek a six-month stay in the wake of his withdrawal.

Discovery is currently set to close April 30, 2026, with a July 20, 2026 trial date that the parties have already noted will be affected by the April 30, 2026 discovery cut-off.  While a withdrawal might require a slight further modification of those deadlines, the six-month stay that Mr. Katon floated at the February 13, 2026 Case Management Conference will upend them, pushing resolution well into 2027.  There is no need for such a delay.

**B.    The Court should impose conditions on any withdrawal of counsel.**

In addition to applying Civil Local Rule 11-5(b)'s provision to require Mr. Katon to accept service of papers for Defendants until new counsel appears, the Court should protect against prejudice, harm to the administration of justice, and unnecessary delay by denying Mr. Katon's withdrawal until Defendants meet five conditions.

***First***, the Court should not allow Mr. Katon's withdrawal until it is satisfied that Mr. Harara understands the implications of the withdrawal and his own obligations—including obligations to obtain new counsel by a date certain and comply with the Federal Rules of Civil Procedure and this Court's Local Rules, and the consequences of failing to promptly obtain counsel for the corporate Defendants.  To that end, Plaintiff suggests that the Court require Mr. Harara to attend the February 27 CMC.

---

[2] At any rate, *Anders*' relevance here is tenuous, at best.  The case addresses how a court-appointed lawyer can balance his ethical obligations with the client's right to counsel under the Sixth and Fourteenth Amendments.  That right, of course, does not attach in a civil case like this one.  *Turner v. Rogers*, 564 U.S. 431 (2011); *Palmer v. Valdez*, 560 F.3d 965 (9th Cir. 2009).

**Second,** the Court should not allow withdrawal until Defendants provide a complete and accurate accounting of their efforts to preserve, collect, and produce relevant, responsive ESI and documents. The motion to withdraw does not suggest that Mr. Katon will remain as counsel until his clients retain substitute counsel. Accordingly, that accounting should bear Mr. Katon's signature as an officer of the Court. Plaintiff's counsel asked Mr. Katon during the January 9, 2026 meet-and-confer videoconference to shed light on the degree to which he supervised Mr. Harara's preservation, collection, and review of relevant ESI and documents. Mr. Katon largely demurred, citing the attorney-client privilege.

Without a clear accounting of Defendants' efforts to date, neither Plaintiff nor the Court can assess what additional steps must be taken to preserve and produce evidence before counsel withdraws.

**Third**, and relatedly, the Court should not allow counsel to withdraw until the current discovery disputes are resolved and remedied. As outlined above, Defendants have impeded discovery and delayed progression of this case. That conduct should not be rewarded. Further, without counsel overseeing Defendants' efforts, Plaintiff has little confidence that Defendants will comply with any order from the Court requiring Defendants to rectify their deficiencies. In short, oversight is necessary.

**Fourth**, to ensure that ESI is properly preserved, the Court should not allow withdrawal until Mr. Harara has submitted all of his, and his entities', electronic devices and online platforms for full forensic preservation. The meet-and-confer process made clear that no forensic preservation had occurred and that Mr. Katon relied on Mr. Harara to self-collect potentially responsive data and documents. Defendants' document production is glaringly sparse. To date, Defendants have produced no payroll documents, no policy or procedure documents, no financial records or information, and very little in the way of electronic messages, social media statements, emails and metadata – despite Mr. Harara's notable use of social media and websites to promote the coffee shop, to categorically deride and dehumanize Jewish and Israeli people, and to discuss his views of the facts and merits of this lawsuit.

What is more, Plaintiff is concerned for good reason that if left entirely unsupervised by counsel, Mr. Harara may destroy relevant evidence. That concern is grounded upon Mr. Harara's failure to produce relevant social-media posts and one of those posts' disappearance after it was brought to Mr. Katon's attention. (*See* Dkt. 68.) And it is exacerbated by Mr. Katon's refusal to describe the extent to which he

10

**Plaintiff's Response to Glenn Katon's Administrative Motion to Withdraw as Counsel for Defendants**
**Case No. 3:25-cv-02060**

1   supervised Mr. Harara's preservation-and-collection efforts thus far.

2       ***Fifth and finally***, the Court should condition withdrawal of counsel upon Defendants' agreeing to

3   abide by either the existing case schedule or one modified only slightly.  The six-month stay Mr. Katon

4   proposed at the last Case Management Conference is absurd.  Such a stay would serve only to reward

5   Defendants for ignoring their discovery obligations under the Federal Rules and this Court's Local Rules.

6       If the Court is inclined to stay the case at all, the stay should last no longer than two weeks.  Mr.

7   Katon informed Plaintiff of his intent to withdraw on February 12, 2026.  By the time of the upcoming

8   February 27 hearing, Mr. Harara will have known for at least 15 days that he needs new counsel.  With an

9   additional two weeks, he will have had a reasonable amount of time to procure new counsel, a task aided

10  by the legal defense fund he has apparently launched in connection with this case.[3]

11  **IV.    CONCLUSION**

12      For the foregoing reasons, an immediate withdrawal would prejudice Plaintiff, the administration

13  of justice, and the case schedule.  The Court should allow withdrawal only after five things happen:

14  (1) Mr. Harara makes clear to the Court that he understands the implications of Mr. Katon's potential

15  withdrawal and his obligations to comply with the Rules, including the inability of the corporate

16  defendants to defend against these claims if unrepresented by counsel by a date certain; (2) Defendants

17  provide a detailed, complete, and accurate accounting of their efforts to preserve, collect, and produce

18  relevant, responsive ESI and documents; (3) Defendants remedy all existing discovery deficiencies; (4)

19  Defendants submit their electronic devices and online platforms for forensic preservation.  (5) Defendants

20  agree to abide by the existing case schedule, or one that extends existing deadlines by only two weeks.

21      In addition, following withdrawal, Plaintiff requests that the Court apply Civil Local Rule 11-5(b)

22  to require Mr. Katon to accept service of papers for Defendants until new counsel appears. Only with these

23  conditions can the Court ensure that Mr. Katon's withdrawal will not prejudice Plaintiff, undermine the

24  efficient administration of justice, or needlessly delay the ultimate resolution of this case.

25

26

27  _____

28  [3] https://www.gofundme.com/f/support-jerusalem-coffee-house (showing over $45,000 raised to date).

Dated:  February 23, 2026

Respectfully submitted,

*s/ Michael D. Meuti*
MICHAEL D. MEUTI (CA 227939)
BENESCH, FRIEDLANDER,
    COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  mmeuti@beneschlaw.com

*Attorney for Plaintiff Michael Radice*

**Plaintiff's Response to Glenn Katon's Administrative Motion to Withdraw as Counsel for Defendants**
**Case No. 3:25-cv-02060**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of February 2026, the foregoing document was served via electronic mail on all counsel of record.

Dated: 02/23/2026

*/s/ Michael D. Meuti*
MICHAEL DOMINIC MEUTI (CA 227939)
BENESCH, FRIEDLANDER,
    COPLAN & ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Email: mmeuti@beneschlaw.com

*One of the Attorneys for Plaintiff Michael Radice*