Michael D. Meuti (CA 227939)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
mmeuti@beneschlaw.com

David M. Hopkins (*Admitted Pro Hac Vice*)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216.363.4500
dhopkins@beneschlaw.com

Corena G. Larimer (CA 277188)
ANTI-DEFAMATION LEAGUE
40 Court Street, Suite #12
Boston, MA 02108
Telephone: 212.885.7700
clarimer@adl.org

James Pasch (*Admitted Pro Hac Vice*)
Brendan Hogan (*Admitted Pro Hac Vice*)
ANTI-DEFAMATION LEAGUE
605 Third Avenue
New York, NY 10158
Telephone: 212.885.7700
jpasch@adl.org
bhogan@adl.org

*Attorneys for Plaintiff*

Glenn Katon
KATON.LAW
385 Grand Ave., Suite 200
Oakland, CA 94610
Telephone: (510) 463-3350
gkaton@katon.law
*Attorney for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RADICE | Case No. 3:25-cv-02060-SI |
| Plaintiff, | Coordinated with |
| vs. | Case No. 3:25-cv-04849-SI |
| JERUSALEM BOXING CLUB, LLC; NATIVE GROUNDS, INC.; ABDULRAHIM HARARA | **STATEMENT CONCERNING DISCOVERY DISPUTE** |
| Defendants. | |

Plaintiff submits this STATEMENT CONCERNING DISCOVERY DISPUTE per Judge Illston's Standing Order and Civil L.R. 37-1.  Defendants responded to Plaintiff's initial draft of his statement, and Plaintiff then updated his statement. Defendants' then-counsel requested a meet-and-confer shortly before the Court allowed him to withdraw from this matter.  When asked if he would prefer to meet-and-confer despite the Court granting his Motion to Withdraw, Defendants' then-counsel declined.  The parties most recently conferred regarding the below issues on March 10, 2026, following five prior conferences to address the same.  During the call on March 10, the parties confirmed that they are at an impasse and now need Court intervention.

## I.      Plaintiff's Statement.

**Defendants' Text Message Production.**  Defendants' text message production exemplifies the failure to conduct a reasonable search or produce responsive ESI.[1]  Defendants produced texts only as screenshots.  Courts hold that format is inappropriate.  *E.g.*, *Laub v. Horbaczewski*, 331 F.R.D. 516, 527-28 (C.D. Cal. 2019).  Many of the produced texts crop out date and counterparty information.  Others are isolated messages, omitting adjacent messages in the thread.  And Harara confirmed at his deposition[2] that at least 81 "texts" are actually screenshots of search results that contain no adjacent messages.  That is not an ESI production.  It is little more than a search hit report.

These deficiencies flow from the process that Defendants chose to employ. Mr. Harara's testimony showed that he alone searched for responsive materials and decided what to produce.  He unilaterally decided to exclude agreed-upon terms from his search and failed to search for translated and transliterated words as requested.  In at least one instance, Defendants redacted a message by scribbling over it digitally because, as Mr. Harara's testimony indicated, he unilaterally concluded that Plaintiff is not entitled to the withheld information.  Yet Defendants produced no privilege log or other record identifying that information.  This selective and unilateral approach not only prevents Plaintiff from understanding

[1] Copies of the production requests Plaintiff served on each Defendant, along with Defendants' responses to those requests, are attached as Exhibits A-C. These requests seek "communications" related to various relevant topics—and that term is expressly defined to include "cell phone text messages (SMS and MMS messages)." (*See, e.g.*, Exhibit A, Definitions at No. 16.)

[2] This deposition took place on March 25 and 27, 2026. Plaintiff will provide the Court with any portions of the transcript it would like to review as soon as Plaintiff receives the final transcript.

**Joint Statement Concerning Discovery Dispute**
**Case No. 3:25-cv-02060-SI**

conversations in context, it also violates core discovery obligations and ESI principles prohibiting parties from degrading discoverable information during production.

Courts recognize that "[p]roducing screenshots of text messages without sender, recipient, or date and time stamp information, or related metadata, is an impermissible 'document dump.'" *E.g.*, *Pso-Rite.com LLC v. Thrival LLC*, 2025 WL 3899841, at *2 (D. Colo. Dec. 23, 2025). Further, Defendants' repeated refusal to correct these flaws shows that vendor-assisted collection is necessary here.

**Defendants' Electronic Materials.** Despite multiple meet-and-confers, Defendants have not produced a single email from Mr. Harara's accounts. Nor have they produced custodial files from his iCloud or Google Drive, even though his testimony showed that he uses those services for business purposes.[3] The absence of these materials from Defendants' production flows from the same flawed self-collection process that infected Defendants' text-message production. Without forensic preservation, responsive emails and cloud documents—as well as materials from Mr. Harara's social media accounts and messaging apps—might never be identified, let alone produced.

**Need for Forensic Preservation.** Mr. Harara's testimony shows that he personally controlled the identification, review, and production of responsive materials from Defendants' devices and accounts. No vendor assisted him. Nor did Defendants' counsel supervise a defensible search or validate the results. That testimony alone establishes good cause for Court intervention. In addition, Mr. Harara's testimony demonstrated that potentially relevant documents have already been lost. A responsive post in his Twitter feed about one of the Jewish customers he ejected disappeared from his account in January, after Plaintiff's counsel raised that post during a meet-and-confer call, and multiple responsive posts disparaging or threatening Jewish or Israeli people have disappeared from his Twitter account since February.[4]

On this record, the only adequate remedy is immediate forensic preservation. This relief is routine where, as here, a producing party's conduct demonstrates that self-collection has failed and that relevant ESI is at risk. *See, e.g., Scott Griffith Collaborative Sols., LLC v. Falck N. Cal. Corp.*, 2021 WL 4846926,

---

[3] Plaintiff's document requests define the term "document" broadly to include "e-mail" and "computer-stored, or electronically stored information ("ESI"), however and by whomever produced, prepared, reproduced, disseminated or made." (*See, e.g.*, Ex. A, Definitions at No. 17.)

[4] Plaintiff's document requests specifically sought "social-media posts posted by" each Defendant since January 23, 2023. (*See* Ex. A & B at Request No. 11; Ex. C at Request No. 5.)

at *6 (N.D. Cal. Sept. 10, 2021) (finding forensic examination to be appropriate due to a party's "failure to take sufficient steps to secure relevant documents") (cleaned up); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 WL 70428 (N.D. Cal. Jan. 9, 2012) (compelling forensic imaging and analysis where deposition established that responsive files likely existed on the hard drive, but the deponent had not searched for them).

Allowing a custodian to unilaterally make responsiveness, relevance, and redaction decisions invites selective production and the loss of metadata, threading, and surrounding communications essential to understanding isolated messages. This approach violates the Federal Rules and this District's ESI principles, producing incomplete and unreliable results that cannot be cured through further self-directed searching. Absent immediate preservation, critical data will likely be lost, overwritten, or selectively excluded.

To prevent that outcome, the Court should order that a neutral third-party vendor preserve sources of potentially responsive documents (including PDFs, photographs, videos, spreadsheets, text messages, emails, and social-media and messaging app data). These sources should then be reviewed by counsel for responsiveness, and all responsive, nonprivileged documents immediately produced with a privilege log for any withheld documents. And should Mr. Katon's pending motion for leave to withdraw be granted, the Court should retain jurisdiction sufficient to ensure that counsel can be called upon to account for the discovery process to date if further inquiry becomes necessary.

**Relief Requested.** Plaintiff respectfully requests that the Court order Defendants to: (1) Engage a neutral third-party vendor to immediately forensically preserve all Defendants' mobile phone, computers, tablets, email accounts, cloud storage, and social-media and messaging app data (at Defendants' expense); (2) Produce all previously produced text messages as complete conversational threads, including metadata, without cropping, redaction for relevance, or selective exclusion; and (3) Produce all responsive text messages, emails, cloud-based documents, photographs, videos, and social-media and messaging data identified through the forensic process.

## II.    Defendants' Statement

Plaintiff does not cite a single Request for Production that he claims a defendant failed to comply with or data that has not been preserved relating to such request.[5] Instead, he simply refers to "responsive" documents as if his representation of responsiveness is a foregone conclusion. Plaintiff has also characterized documents produced and deposition testimony that are not before the Court. It is respectfully submitted that Plaintiff has not given the Court a sufficient basis to require a defendant to produce anything, much less a hire a vendor to preserve ESI.

**Text Messages**: In one of his Requests for Production, Plaintiff requested "statements *authored by you*" (emphasis added).[6] He then complains that Defendants did not produce texts by other people. Plaintiff, in effect, asks the Court to rewrite his request to obtain what he would have liked to have sought. Plaintiff further complains that Defendants produced screenshots of texts messages and: "That is not an ESI production." Rule 34(b)(1)(C) provides that a request "may specify the form or forms in which electronically stored information is to be produced." Plaintiff did not specify that any documents be produced as electronically stored information. Thus, Plaintiff again asks the Court to rewrite his Requests for Production to obtain what he did not actually request.

**Electronic Materials:** Plaintiff complains that Defendants have not produced any email from Defendants' accounts. Plaintiff does not, however, give the Court any reason to believe that Defendants have emails that are responsive to his requests. Given that Defendant Harara sat for two days of deposition last week, if Plaintiff cannot point to responsive emails that Defendants have failed to produce, he should not be asking the Court to order production of something he has not identified. Plaintiff also asserts that Harara has not "produced custodial files from his iCloud or Google Drive, even though his testimony showed that he uses those services for business purposes." Again, conspicuously absent from Plaintiff's assertion is any Request for Production that would require him to produce such files.

---

[5] Defendants make several assertions here that Plaintiff has not requested documents he asks the Court to order Defendants to produce, though he does not attach the multiple sets of requests served. It is, of course, Plaintiff's burden to prove he is entitled to the relief he demands.

[6] Plaintiff does not specify for the Court which texts are responsive to which request.

**Joint Statement Concerning Discovery Dispute**
**Case No. 3:25-cv-02060-SI**

**Preservation of Evidence:** Plaintiff makes numerous bare assertions of fact that this Court should not credit.[7] For example, there is no basis for Plaintiff's contention that Defendants' counsel did not "supervise a defensible search or validate the results." Plaintiff further asserts with no support that "multiple responsive posts disparaging or threatening Jewish or Israeli people have disappeared from [Harara's] Twitter account since February." First, Defendants have no idea what posts Plaintiff is referring to or what requests for production he is invoking. Plaintiff made a request for documents authored by Harara relating to Jewish people but none relating to Israeli people. Regardless, Plaintiff does not assert that Defendants have destroyed or failed to produce a document authored by Harara relating to Jewish people and, once again, Plaintiff should not be asking the Court to order relief based upon requests Plaintiff has not made.

**Conclusion**: Plaintiff asks for relief based on unsupported assertions of fact and requests for production that they have not made. The Court should, therefore, reject Plaintiff's demands in their entirety.

Dated: 4/3/2026

/s/ David M. Hopkins
Counsel for Plaintiff

---

[7] This would be true for any litigant but is especially true for one whose lawyer previously made a false statement in a declaration. ECF 74, at 4/12-19.

**Joint Statement Concerning Discovery Dispute**
**Case No. 3:25-cv-02060-SI**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on the 3rd day of April, 2026, the foregoing document was served via operation of the Court's ECF system, as well as upon the below by Regular U.S. Mail:

Abdulrahim Harara
3405 Helen Street, Apt. 5
Oakland, CA 94608

*/s/ David M. Hopkins*

One of the Attorneys for Plaintiff
Michael Radice

Dated: 4/3/2026