# EXHIBIT B

Glenn Katon (SBN 281841)
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
(510) 463-3350
(510) 463-3349 (fax)

ATTORNEY FOR DEFENDANTS JERUSALEM
BOXING CLUB, LLC, NATIVE GROUNDS, INC.,
and ABDULRAHIM HARARA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL RADICE,<br><br>Plaintiff,<br><br>v.<br><br>JERUSALEM BOXING CLUB, LLC;<br>NATIVE GROUNDS, INC.;<br>ABDULRAHIM HARARA; DOES 1–20,<br><br>Defendants. | Case No.  3:25-cv-02060-SI<br><br>**DEFENDANT JERUSALEM BOXING CLUB, LLC'S RESPONSE TO MICHAEL RADICE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF REQUESTS FOR ADMISSION** |

Defendant Jerusalem Boxing Club, LLC (JBC or Defendant) responds to Plaintiff Michael Radice's First Set of Requests for Production and First Set of Requests for Admission as follows:

JBC objects to the Definitions and Instructions to the extent they purport to impose greater obligations on JBC than those provided by the Federal Rules of Civil Procedure. This includes, but is not limited to, ¶¶ 18-21 of the Definitions and ¶ 1 of the Instructions. Responsive records will be produced on a rolling basis, to be completed by October 28, 2025.

## **RESPONSES TO DOCUMENTS REQUESTED**

1.    All Documents and Communications concerning your interaction with Mr. Radice on or about July 10, 2024 and/or August 3, 2024, including but not limited to all recordings, written

records, and police or internal incident reports.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld. Documents filed with the court in this case or Case No. 3:25-cv-04849-SI, or communicated with Plaintiff Radice's counsel, will not be produced.

2.    All Documents and Communications concerning your interaction with Jonathan Hirsch on or about October 26, 2024, including but not limited to all recordings, written records, and police or internal incident reports.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld. Documents filed with the court in this case or Case No. 3:25-cv-04849-SI, or communicated with Plaintiff Radice's counsel, will not be produced.

3.    All Documents and Communications concerning any customers removed or ejected from JCH.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

4.    All Documents and Communications concerning any incidents with customers that you contend were staged.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

5.    Documents and Communications sufficient to identify all your employees, their job titles, and their job responsibilities.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

6.      All Documents and Communications identifying all employees, contractors, volunteers, or other Persons who worked at JCH on July 10, 2024, August 3, 2024, or October 26, 2024, including but not limited to all employee timesheets for the months of July, August, and October 2024.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

7.      All Documents and Communications relevant to the "Iced In Tea Fada" offered on JCH's menu, including documents identifying when the item was offered, how the name was selected, who was responsible for naming the item, and the reasons for introducing it as a menu item.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

8.      All Documents and Communications relevant to the "Sweet Sinwar" offered on JCH's menu, including documents identifying when the item was offered, how the name was selected, who was responsible for naming the item, and the reasons for introducing it as a menu item.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

9.      All Documents and Communications concerning any menus that you displayed, or considered displaying at JCH, including but not limited to all Documents and Communications concerning the menu included in Paragraph 65 of Mr. Radice's Complaint.

RESPONSE: Objection: this request is overbroad and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

10. All Documents and Communications, including but not limited to photographs and videos, concerning or depicting the interior or exterior of the building in which JCH is housed, including signage, symbols, or decor, as displayed from July 1, 2024 through October 31, 2024.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

11. All Documents and Communications concerning any social-media posts by you, including but not limited to those made on Instagram, Facebook, WhatsApp, or any other similar social-media platform from January 1, 2023 to present.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges. The request is also not proportional to the needs of the case. Pursuant to those objections, Defendant is not producing any responsive records.

12. All Documents and Communications concerning any social-media policies that you may have.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

13. All Documents and Communications concerning the structure and ownership of JBC.

RESPONSE: Objection: this request is vague, overbroad and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

14. All Documents and Communications identifying JBC's operations, including any publishing polices or procedures.

RESPONSE: Objection: this request is vague, overbroad and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

15.    All Documents and Communications concerning any relationship between JBC and Native Grounds, including but not limited to all contracts between JBC and Native Grounds.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

16.    All Documents and Communications concerning your ability to sell food and beverages to the public, including but not limited to business licenses, health permits, or other government-issued authorizations.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges. Further, this request is not relevant to any party's claim or defense or proportional to the needs of the case. Pursuant to those objections, Defendant is not producing any responsive records.

17.    All Documents and Communications relating to employee training, including but not limited to all employee manuals or handbooks.

RESPONSE: Objection: this request is overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

18.    All Documents and Communications concerning any customer complaints made against you.

RESPONSE: Objection: this request is overbroad and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

19.    All Documents and Communications concerning any governmental or regulatory violations by you including, but not limited to, health code violations and police citations.

RESPONSE: Objection: this request is overbroad and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

20.     All Documents and Communications concerning your assertion in Paragraph 40 of your Answer that "Am Yisrael Chai" does not "simply mean[] 'the people of Israel live.'"

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

21.     All Documents and Communications concerning the "conduct" that you allege Mr. Radice was engaged in in Paragraph 74 of your Answer.

RESPONSE: Objection: Paragraph 74 of the Answer does not relate to conduct that Defendant alleges Mr. Radice was engaged in.

22.     All Documents and Communications concerning your assertion in Paragraph 82 of Your Answer that Mr. Radice was not "attempt[ing] to purchase a cookie" when he visited JCH on August 3, 2024.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

23.     All Documents and Communications concerning your assertion in Paragraph 83 of your Answer denying that "Defendants refused to serve Mr. Radice" on August 3, 2024.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

24.     All Documents and Communications concerning the affirmative defense in your Answer stating that Mr. Radice is "barred from equitable relief by the doctrine of unclean hands."

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

25.     Documents and Communications sufficient to identify your assets—including but not limited to bank accounts, real estate, and personal property—and the value thereof.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges. Further, this request is not relevant to any party's claim or defense or proportional to the needs of the case such that Defendant will not produce any responsive records.

DEFENDANT JERUSALEM BOXING CLUB, LLC'S RESPONSE TO MICHAEL RADICE'S
FIRST SET OF REQUESTS Case No. 3:25-cv-02060-SI                                      Page 6

26.     All leases of real property by you.

RESPONSE: Objection: this request is overbroad and not relevant to any party's claim or defense or proportional to the needs of the case such that Defendant will not produce any responsive records.

27.     All of your sales records for July through December 2024.

RESPONSE: Objection: this request is vague, overbroad and not relevant to any party's claim or defense or proportional to the needs of the case such that Defendant will not produce any responsive records.

28.     All Documents and Communications concerning your document retention policies.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

29.     To the extent not otherwise requested above, all additional Documents and Communications containing information relevant to the claims and issues in this Action, including but not limited to all Documents not previously requested that You intend to introduce as exhibits at a hearing and/or trial or during any deposition conducted in this matter.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld

## **REQUESTS FOR ADMISSION**

1.     Admit that Mr. Harara formed JBC in February 2023.

RESPONSE: Admit

2.     Admit that Mr. Harara was the Chief Executive Officer of JBC from at least July 10, 2024 through August 3, 2024.

RESPONSE: Admit

3.     Admit that Mr. Harara was the sole member of JBC from at least July 10, 2024 through August 3, 2024.

RESPONSE: Admit

4.     Admit that Mr. Harara was the sole manager of JBC from at least July 10, 2024 through August 3, 2024.

RESPONSE: Admit

5.     Admit that Mr. Harara is currently the Chief Executive Officer of JBC.

RESPONSE: Admit

6.     Admit that Mr. Harara is currently the sole member of JBC.

RESPONSE: Admit

7.     Admit that Mr. Harara is currently the sole manager of JBC.

RESPONSE: Admit

8.     Admit that JBC is a "wellness" business.

RESPONSE: Admit

9.     Admit that JBC is not a "wellness" business.

RESPONSE: Deny

10.    Admit that JBC had revenues in 2024.

RESPONSE: Admit

11.    Admit that JBC had revenues in 2025.

RESPONSE: Admit

12.    Admit that JBC operates JCH.

RESPONSE: Admit

13.    Admit that written policies and procedures govern JCH's operations.

RESPONSE: Deny

14.    Admit that JCH has employees.

RESPONSE: Admit

15.    Admit that JCH has written policies and/or procedures governing employee conduct.

RESPONSE: Deny

16.    Admit that all of JBC's 2024 revenues came from JCH's operations.

RESPONSE: Objection: this request is not relevant to any party's claim or defense or

proportional to the needs of the case.

17. Admit that all of JBC's 2025 revenues came from JCH's operations.

RESPONSE: Objection: this request is not relevant to any party's claim or defense or proportional to the needs of the case.

18. Admit that any portion of JBC's 2024 revenues came from something other than JCH's operations.

RESPONSE: Objection: this request is not understandable and is not relevant to any party's claim or defense or proportional to the needs of the case.

19. Admit that any portion of JBC's 2025 revenues came from something other than JCH's operations.

RESPONSE: Objection: this request is not understandable and is not relevant to any party's claim or defense or proportional to the needs of the case.

20. Admit that JBC has a business relationship with Native Grounds.

RESPONSE: Objection: vague. Subject to that objection, deny.

21. Admit that JBC has no business relationship with Native Grounds.

RESPONSE: Objection: vague. Subject to that objection, admit.

22. Admit that Mr. Harara operates JCH.

RESPONSE: Admit

23. Admit that Mr. Harara holds himself out to be the proprietor of JCH.

RESPONSE: Admit

24. Admit that on or about July 10, 2024, a JCH employee observed Mr. Radice walking along the sidewalk outside JCH.

RESPONSE: Admit

25. Admit that on or about July 10, 2024, a JCH employee observed Mr. Radice wearing a hat with a Star of David emblazoned on it.

RESPONSE: Admit

26. Admit that the employee who observed Mr. Radice walking along the sidewalk outside JCH on or about July 10, 2024 saw the hat Mr. Radice was wearing with a Star of David

emblazoned on it.

RESPONSE: Admit

27.    Admit that the employee who observed Mr. Radice walking along the sidewalk outside JCH on or about July 10, 2024 believed that Mr. Radice was Jewish.

RESPONSE: Deny

28.    Admit that JCH offered beverage items for sale to the public in August 2024

RESPONSE: Admit

29.    Admit that JCH currently offers beverage items for sale to the public.

RESPONSE: Admit

30.    Admit that JCH has offered beverage items for sale to the public at all times since its opening.

RESPONSE: Admit

31.    Admit that JCH offered food items for sale to the public in August 2024.

RESPONSE: Admit

32.    Admit that JCH currently offers food items for sale to the public.

RESPONSE: Admit

33.    Admit that JCH has offered items for sale to the public at all times since its opening.

RESPONSE: Admit

34.    Admit that JCH's menu included food items for sale to the public in August 2024.

RESPONSE: Admit

35.    Admit that JCH's menu currently includes food items for sale to the public.

RESPONSE: Admit

36.    Admit that JCH's menu has included food items for sale to the public at all times since its opening.

RESPONSE: Deny

37.    Admit that JCH's food offerings in August 2024 included items such as focaccia, muffins, and cookies.

RESPONSE: Admit

38. Admit that JCH's food offerings currently include items such as focaccia, muffins, and cookies.

RESPONSE: Admit

39. Admit that JCH's food offerings have included items such as focaccia, muffins, and cookies at all times since its opening.

RESPONSE: Deny

40. Admit that JCH's menu was publicly accessible on Instagram in August 2024.

RESPONSE: Admit

41. Admit that JCH's menu is currently publicly accessible on Instagram.

RESPONSE: Admit

42. Admit that JCH's menu has been publicly accessible on Instagram at all times since its opening.

RESPONSE: Admit

43. Admit that JCH's menu was publicly accessible on Facebook in August 2024.

RESPONSE: Deny

44. Admit that JCH's menu is currently publicly accessible on Facebook.

RESPONSE: Deny

45. Admit that JCH's menu has been publicly accessible on Facebook at all times since its opening.

RESPONSE: Deny

46. Admit that JCH's menu is currently publicly accessible on X (formerly known as "Twitter").

RESPONSE: Deny

47. Admit that JCH's menu has been publicly accessible on X (formerly known as "Twitter") at all times since its opening.

RESPONSE: Deny

48.     Admit that on July 10, 2024, JCH sold food items.

RESPONSE: Admit

49.     Admit that on August 3, 2024, JCH sold food items.

RESPONSE: Admit

50.     Admit that during the Fall of 2024, the "Sweet Sinwar" drink appeared on JCH's menu.

RESPONSE: Admit

51.     Admit the name "Sweet Sinwar" used for the drink offered at JCH during the fall of 2024 referred to Yahyah Sinwar.

RESPONSE: Admit

52.     Admit that, to the best of your understanding, Yahya Sinwar was the leader of Hamas in 2023.

RESPONSE: Deny

53.     Admit that during the fall of 2024, JCH offered a drink named the "Iced In Tea Fada."

RESPONSE: Admit

54.     Admit that the menu item "Iced in Tea Fada" refers to the term "intifada."

RESPONSE: Admit

55.     Admit that JCH's menu and building featured inverted red triangles.

RESPONSE: Admit

56.     Admit that on or about October 7, 2024, the version of JCH's menu that featured the "Iced In Tea Fada" and "Sweet Sinwar" drinks also included inverted red triangle symbols.

RESPONSE: Admit

57.     Admit that on or about October 29, 2024, Mr. Harara called the police to remove Jonathan Hirsch from JCH.

RESPONSE: Deny

58.     Admit that Jonathan Hirsch was wearing a hat with a white Star of David while he was in JCH on or about October 29, 2024.

RESPONSE: Deny

59.    Admit that Jonathan Hirsch was wearing a hat with a white Star of David when Mr. Harara called the police to remove him from JCH on or about October 29, 2024.

RESPONSE: Deny

60.    Admit that Mr. Harara asked Jonathan Hirsch to leave JCH several times during his visit on or about October 29, 2024.

RESPONSE: Deny

61.    Admit that Jonathan Hirsch's hat was at least one of the reasons he was asked to leave JCH during his visit on or about October 29, 2024.

RESPONSE: Deny

62.    Admit that Jonathan Hirsch's hat is what triggered Mr. Harara's confrontation with Mr. Hirsch during Mr. Hirsch's visit to JCH on or about October 29, 2024.

RESPONSE: Deny

63.    Admit that Mr. Harara was acting as JCH's owner when he confronted Mr. Hirsch in JCH on October 29, 2024.

RESPONSE: Deny

64.    Admit that Mr. Harara was acting as JCH's operator when he confronted Mr. Hirsch in JCH on October 29, 2024.

RESPONSE: Deny

65.    Admit that the Star of David is a widely recognized Jewish symbol.

RESPONSE: Admit

66.    Admit that Mr. Harara called Jonathan Hirsch's hat "a violent hat" during Mr. Hirsch's visit to JCH on or about October 29, 2024

RESPONSE: Deny

67.    Admit that when Mr. Harara described Jonathan Hirsch's hat as a "violent hat" during his visit to JCH on or about October 29, 2024, he was referring to the Star of David symbol featured on that hat.

RESPONSE: Deny

68. Admit that on October 29, 2024, Mr. Harara told Jonathan Hirsch, "Get out of my business. ... This hat is a violent hat, and you need to leave."

RESPONSE: Deny

69. Admit that on October 29, 2024, Jonathan Hirsch told Mr. Harara that he could not kick someone out of the establishment only because of the religious symbol on the hat.

RESPONSE: Deny

70. Admit that on October 29, 2024, Mr. Harara responded to Mr. Hirsch's assertion that he could not kick someone out of JCH only because of the religious symbol on his hat by saying, "Yeah, I can. It's my business."

RESPONSE: Deny

71. Admit that on October 29, 2024, Mr. Harara asked Jonathan Hirsch if he was a Zionist multiple times.

RESPONSE: Deny

72. Admit that a JCH employee spoke to Plaintiff outside JCH on July 10, 2024.

RESPONSE: Deny

73. Admit that a JCH employee asked Plaintiff on July 10, 2024 whether he was a Zionist.

RESPONSE: Deny

74. Admit that one of the JCH employees who spoke to Plaintiff outside JCH on July 10, 2024 was Gabriel Garay.

RESPONSE: Deny

75. Admit that Mr. Harara spoke to Plaintiff outside JCH on July 10, 2024.

RESPONSE: Deny

76. Admit that Plaintiff visited JCH on August 3, 2024.

RESPONSE: Admit

77. Admit that Mr. Harara was working at JCH on August 3, 2024.

RESPONSE: Deny

78. Admit that on August 3, 2024, Plaintiff approached the counter at JCH.

RESPONSE: Deny

79.    Admit that on August 3, 2024, in addition to Plaintiff and Mr. Harara, at least two other JCH employees were present inside JCH, and both were known by Mr. Harara.

RESPONSE: Deny

80.    Admit that Mr. Harara asked Plaintiff—on August 3, 2024—whether he was a Zionist.

RESPONSE: Admit

81.    Admit that Plaintiff expressed his intention to make a purchase from JCH during his visit to JCH on August 3, 2024.

RESPONSE: Deny

82.    Admit that when Mr. Radice visited JCH on or about August 3, 2024, he ordered a food item.

RESPONSE: Deny

83.    Admit that on August 3, 2024, food items were visibly displayed and could be seen by customers standing at the counter inside JCH.

RESPONSE: Admit

84.    Admit that on August 3, 2024, JCH offered food items available for sale to the public.

RESPONSE: Admit

85.    Admit that an employee of JCH recognized Plaintiff during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Admit

86.    Admit that an employee of JCH commented on Plaintiff's Jewish identity during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Deny

87.    Admit that Mr. Harara asked the Plaintiff to leave JCH before the Plaintiff purchased anything during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Deny

88.    Admit that Mr. Harara asked the Plaintiff to leave JCH before fulfilling Plaintiff's request to purchase food during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Deny

89.    Admit that when Plaintiff visited JCH on or about August 3, 2024, JCH employees did not provide him with a food item.

RESPONSE: Admit

90.    Admit that when Plaintiff visited JCH on or about August 3, 2024, at least one of JCH employees believed that Mr. Radice identified as Jewish.

RESPONSE: Deny

91.    Admit that when Plaintiff visited JCH on or about August 3, 2024, at least one of JCH employees believed that Mr. Radice had Jewish ancestry.

RESPONSE: Deny

92.    Admit that when Plaintiff visited JCH on or about August 3, 2024, at least one of JCH employees believed that Mr. Radice practiced Judaism.

RESPONSE: Deny

93.    Admit that when Plaintiff visited JCH on or about August 3, 2024, JCH employees refused to serve Mr. Radice.

RESPONSE: Deny

94.    Admit that when Plaintiff visited JCH on or about August 3, 2024, at least one of JCH employees instructed Mr. Radice to leave JCH.

RESPONSE: Deny

95.    Admit that Mr. Harara asked the Plaintiff to leave before the Plaintiff could purchase anything during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Deny

96.    Admit that an employee of JCH other than Mr. Harara told the Plaintiff to leave before he could make a purchase during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Deny

DEFENDANT JERUSALEM BOXING CLUB, LLC'S RESPONSE TO MICHAEL RADICE'S
FIRST SET OF REQUESTS Case No. 3:25-cv-02060-SI                                        Page 16

/s/ Glenn Katon
Glenn Katon

ATTORNEY FOR DEFENDANTS JERUSALEM BOXING CLUB, LLC, NATIVE GROUNDS, INC., and ABDULRAHIM HARARA

CERTIFICATE OF SERVICE

I certify that I served the foregoing document by email to the following email addresses on the date indicated below: DHopkins@beneschlaw.com, MMeuti@beneschlaw.com, jpasch@adl.org, clarimer@adl.org, bhogan@adl.org

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 14, 2025.

/s/ Glenn Katon
Glenn Katon