# Exhibit A
# Part 2 of 3

# Exhibit C

**From:**       Meuti, Michael
**To:**         Jonathan Wallace; Ramsey Judah
**Cc:**         Larimer, Corena; Hogan, Brendan; Pasch, James; Basrawi, Mazen (CRT); Yohannes Ejigu; Montgomery, Michael; Hopkins, Dave
**Subject:**    Radice v. Harara: Discovery deficiencies
**Date:**       Monday, April 27, 2026 10:14:50 AM

Jonathan, Ramsey,

Thanks for taking the time to speak with us last week.  As we discussed, this email lays out some of our concerns w/r/t the conduct of discovery in this case.

We understand that you have many other cases and that you are handling this case pro bono.  Regardless, fact discovery in this case closes on Friday, and we have been pushing since January for your client to correct many of the issues outlined below.

We are prepared to seek Court intervention on Friday.  So that we will know whether we need to do so, please let us know by **close of business Wednesday** what you are willing to do and when you expect to have it done.  We can make ourselves available for a call on Thursday to discuss.

**<u>Legal Defense Fund</u>**

As an initial matter, you'd suggested that the Defendants lack the means to properly preserve and produce ESI in this case.  In response, we mentioned the DefendJCH fund.  You replied that the existence of that fund was news to you.

Here are links to the fund's website, Instagram page, and Gofundme page.  The latter reflects $50,795 raised to date.  When I'd checked the page a couple weeks ago, it reflected a total several thousand dollars less than that, which shows that the fundraising is ongoing.

**<u>Immediate Requests</u>**

1. ***Clarification of April 17 production***

The primary purpose for last week's call was to help us gain an understanding of what your April 17 production was intended to represent, so that we can discern whether they comply with the Court's April 7 order.  During the call, you were not able to provide that explanation, but said that you would endeavor to do so.

In the near term, we need you to do two things:  (1) re-produce what was sent on April 17 with Bates labels, (2) insofar as the April 17 production is intended as an update to prior productions, provide a table of concordance reflecting the relationship between each page of the April 17 production and the relevant page(s) of the prior productions.  Please supplement #2 with information explaining what the April 17 production is intended to show.

2. ***Forensic Preservation***

During the call, we also explained the need for Defendants to forensically preserve their data to both facilitate proper searches for responsive data supervised by counsel and to ensure that data was not/is not lost.  To be specific, the following sources of data need to be preserved:

- Harara's phone
- Harara's two MacBooks
- The gmail accounts that Harara uses, including at least:
    - abdulrahimharara@gmail.com
    - hello@jerusalemcoffeehouse.com
    - team@jerusalemboxingclub.com
- The Google Drive data associated with each of those emails
- The social-media accounts to which Harara has sign-in access, which include at least
    - Mr. Harara's Facebook account
    - The @raheemjbc X account
    - The @arahimh Instagram account
    - The @jerusalemcoffeehouse Instagram account
    - The @jerusalemboxingclub Instagram account
    - The @sandgazing Instagram account
    - Any Signal account to which Harar has sign-in access
    - Any WhatsApp account to which Harar has sign-in access
- The Google Drive data associated with each of those emails

As we noted, our understanding is that the way discovery has been conducted to date has created a significant fox-guarding-the-henhouse problem that has resulted in responsive data being wrongfully withheld, and—in at least one instance—taken down (at least temporarily). We are concerned that additional spoliation has occurred.

**Additional Deficiencies**

1. ***iMessage production***

Beyond those immediate requests, we have a substantial concern regarding the format and nature of text messages produced to date.  As we discussed, your client chose to produce text messages by screenshot.  Courts reject that approach.  *Pso-Rite.com LLC v. Thrival LLC*, No. 1:21-CV-00775-PAB-STV, 2025 WL 3899841, at *2 (D. Colo. Dec. 23, 2025) (ordering forensic imaging of devices with discoverable text messages after finding that "[p]roducing screenshots of text messages without sender, recipient, or date and time stamp information,

or related metadata, is an impermissible 'document dump.'"); *Laub v. Horbaczewski*, 331 F.R.D. 516, 528 (C.D. Cal. 2019) (ordering production of "text messages either in … spreadsheet form … or, alternatively, in an otherwise mutually agreeable usable format that preserves the integrity of the threads of communication reflected in the text messages"); *see also id.* (collecting cases addressing text-message-production format).  As the *Laub* court noted, "a party who responds to a discovery request by simply producing electronically stored information in a form of its choice, without first discussing the form with the requesting party, 'runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form.'" *Id.* at 527 (quoting Fed. R. Civ. P. 34 advisory committee's notes to 2006 amendment).

Beyond the format problem, many of the screenshots contain only the particular text messages on which a search term "hit" and withhold responsive adjacent messages.  *See, e.g.*, DEFS0303–04, 0310-11.  At his deposition, Harara admitted that at least 81 of the produced text messages suffer from this problem.  (3/27/26 Dep. Tr. at 377:19–392:8.)

Other produced documents show portions of a text thread, but omit other communications in the thread that are almost certainly responsive.  E.g., DEFS0314, 0325, 0359, 0363.  Even if some of the other communications were not responsive, redacting or cropping out for relevance (rather than privilege) is improper.

And at least one of the produced documents (DEFS0374) is redacted for relevance.  Harara testified that he scribbled over that message because we are "not at liberty to see" it.  (3/27/26 Dep. Tr. at 455:14–456:2.)  That is improper.

In short, counsel need to review Harara's iMessages for responsiveness, and then the iMessages need to be produced in a format that ensures that responsive communications are neither redacted nor excised.

## 2. *Text productions from platforms other than iManage*

Harara testified that he uses platforms other than iManage to send text messages, including WhatsApp, Signal, and InstaGram's messaging function.  No communications from any of those platforms were produced, and it is unclear whether he has searched them for responsive communications.  Counsel-supervised searches need to be conducted and responsive communications need to be produced.

## 3. *Email production*

Your client's April 17 declaration states under penalty of perjury that he has searched for responsive e-mails, but has none.  His testimony strongly suggests otherwise.  He testified that JBC's business records "probably" exist in his email accounts (3/25/26 Dep. Tr. at 147:2-13), and that the café's lease is "probably somewhere in [his] email" (*id.* at 119:3-16).  RFP 26

to JBC requests the lease; Defendants have not produced it.

What's more, DEFS0325 references an email that "David" (likely the café's landlord) sent to Harara.  That email has not been produced.

We are concerned that responsive emails are being withheld, and that your client may have perjured himself in his April 17 declaration.

Counsel-supervised searches need to be conducted and responsive emails need to be produced.

4. ***Social-media production***

As outlined above, Harara maintains at least six social-media accounts.  He has produced maybe four InstaGram posts, although it is not clear from the documents produced that they are social-media posts.  (DEFS0279–82.)

His social-media accounts contain responsive documents.  Exhibit 48 to his deposition is an InstaGram post containing the café's menu.  It is responsive to at least four different RFPs (nos. 7–9 and 23).  It was never produced.  Exhibit 41 to his deposition is a post to X calling Jonathan Hirsch "Zionist scum."  It is responsive to RFPs 2, 3, 11, 23 and maybe 4.  It was never produced.  Worse, it appears to have been spoliated.  We brought the existence of that post to former counsel's attention on January 9, after he relayed that Harara told him that his social-media accounts contain no responsive documents.  The following week, that post disappeared from Harara's X feed, as Exhibit 39 to Harara's deposition reflects.  Only after we raised the apparent spoliation with former counsel did the post reappear.

Counsel-supervised searches need to be conducted and responsive social-media posts need to be produced.

* * * *

We look forward to receiving your response to each of the items outlined above.

Stay well,

MDM

# Exhibit D

| | |
|---|---|
| **From:** | Meuti, Michael |
| **To:** | Ramsey Judah; bhogan@adl.org; clarimer@adl.org; Hopkins, Dave; jpasch@adl.org |
| **Cc:** | Jonathan Wallace |
| **Subject:** | RE: Discovery Order Request: Text Messages |
| **Date:** | Monday, April 20, 2026 8:44:44 AM |

Ramsey,

We do not understand what these productions are intended to represent. Additionally, we note that they are not Bates labeled, which makes referencing them difficult.

Please let us know when today, tomorrow, or Wednesday you are available to meet and confer regarding this production and your client's declaration.

Stay well,

MDM

Michael D. Meuti
Partner
Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.6246 | m: 650.468.3160
MMeuti@beneschlaw.com | vCard | Bio | www.beneschlaw.com
127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

---

**From:** Ramsey Judah <ramsey@judahlawgroup.com>
**Sent:** Friday, April 17, 2026 6:34 PM
**To:** bhogan@adl.org; clarimer@adl.org; Hopkins, Dave <DHopkins@beneschlaw.com>; jpasch@adl.org; Thompson, James <jethompson@beneschlaw.com>; Vera, Adriana <AVera@beneschlaw.com>; Kinkaid, Danielle <DKinkaid@beneschlaw.com>; Docket Department <Docket2@Beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Krueger, Roberta <RKrueger@beneschlaw.com>
**Cc:** Jonathan Wallace <jonathan.wallace80@gmail.com>
**Subject:** Discovery Order Request: Text Messages

Counsels, attached are the text messages requested.

Ramsey Judah, Attorney

626 899 7667

JudahLawGroup.com

NOTICES: This message, including attachments, is confidential and may contain information protected by the attorney-client privilege or work product doctrine. If you are not the addressee, any disclosure, copying, distribution, or use of the contents of this message are prohibited. If you have received this email in error, please destroy it and notify me immediately. Any advice contained in this message is not intended or written to be

used, and cannot be used, for the purpose of (1) avoiding penalties under the law or (2) promoting, marketing, or recommending to others any law-related matter(s) addressed here.

# Exhibit E

Glenn Katon (SBN 281841)
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
(510) 463-3350
(510) 463-3349 (fax)

ATTORNEY FOR DEFENDANTS JERUSALEM
BOXING CLUB, LLC, NATIVE GROUNDS, INC.,
and ABDULRAHIM HARARA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL RADICE,<br><br>        Plaintiff,<br><br>        v.<br><br>JERUSALEM BOXING CLUB, LLC;<br>NATIVE GROUNDS, INC.;<br>ABDULRAHIM HARARA; DOES 1–20,<br><br>        Defendants. | Case No.  3:25-cv-02060-SI<br><br>**DEFENDANT JERUSALEM BOXING CLUB, LLC'S RESPONSE TO MICHAEL RADICE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF REQUESTS FOR ADMISSION** |

Defendant Jerusalem Boxing Club, LLC (JBC or Defendant) responds to Plaintiff Michael Radice's First Set of Requests for Production and First Set of Requests for Admission as follows:

JBC objects to the Definitions and Instructions to the extent they purport to impose greater obligations on JBC than those provided by the Federal Rules of Civil Procedure. This includes, but is not limited to, ¶¶ 18-21 of the Definitions and ¶ 1 of the Instructions. Responsive records will be produced on a rolling basis, to be completed by October 28, 2025.

**RESPONSES TO DOCUMENTS REQUESTED**

1.    All Documents and Communications concerning your interaction with Mr. Radice on or about July 10, 2024 and/or August 3, 2024, including but not limited to all recordings, written

records, and police or internal incident reports.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld. Documents filed with the court in this case or Case No. 3:25-cv-04849-SI, or communicated with Plaintiff Radice's counsel, will not be produced.

2.    All Documents and Communications concerning your interaction with Jonathan Hirsch on or about October 26, 2024, including but not limited to all recordings, written records, and police or internal incident reports.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld. Documents filed with the court in this case or Case No. 3:25-cv-04849-SI, or communicated with Plaintiff Radice's counsel, will not be produced.

3.    All Documents and Communications concerning any customers removed or ejected from JCH.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

4.    All Documents and Communications concerning any incidents with customers that you contend were staged.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

5.    Documents and Communications sufficient to identify all your employees, their job titles, and their job responsibilities.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

6.    All Documents and Communications identifying all employees, contractors, volunteers, or other Persons who worked at JCH on July 10, 2024, August 3, 2024, or October 26, 2024, including but not limited to all employee timesheets for the months of July, August, and October 2024.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

7.    All Documents and Communications relevant to the "Iced In Tea Fada" offered on JCH's menu, including documents identifying when the item was offered, how the name was selected, who was responsible for naming the item, and the reasons for introducing it as a menu item.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

8.    All Documents and Communications relevant to the "Sweet Sinwar" offered on JCH's menu, including documents identifying when the item was offered, how the name was selected, who was responsible for naming the item, and the reasons for introducing it as a menu item.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

9.    All Documents and Communications concerning any menus that you displayed, or considered displaying at JCH, including but not limited to all Documents and Communications concerning the menu included in Paragraph 65 of Mr. Radice's Complaint.

RESPONSE: Objection: this request is overbroad and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

10.    All Documents and Communications, including but not limited to photographs and videos, concerning or depicting the interior or exterior of the building in which JCH is housed, including signage, symbols, or decor, as displayed from July 1, 2024 through October 31, 2024.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

11.    All Documents and Communications concerning any social-media posts by you, including but not limited to those made on Instagram, Facebook, WhatsApp, or any other similar social-media platform from January 1, 2023 to present.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges. The request is also not proportional to the needs of the case. Pursuant to those objections, Defendant is not producing any responsive records.

12.    All Documents and Communications concerning any social-media policies that you may have.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

13.    All Documents and Communications concerning the structure and ownership of JBC.

RESPONSE: Objection: this request is vague, overbroad and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

14.    All Documents and Communications identifying JBC's operations, including any publishing polices or procedures.

RESPONSE: Objection: this request is vague, overbroad and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

15.    All Documents and Communications concerning any relationship between JBC and Native Grounds, including but not limited to all contracts between JBC and Native Grounds.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

16.    All Documents and Communications concerning your ability to sell food and beverages to the public, including but not limited to business licenses, health permits, or other government-issued authorizations.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges. Further, this request is not relevant to any party's claim or defense or proportional to the needs of the case. Pursuant to those objections, Defendant is not producing any responsive records.

17.    All Documents and Communications relating to employee training, including but not limited to all employee manuals or handbooks.

RESPONSE: Objection: this request is overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

18.    All Documents and Communications concerning any customer complaints made against you.

RESPONSE: Objection: this request is overbroad and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

19.    All Documents and Communications concerning any governmental or regulatory violations by you including, but not limited to, health code violations and police citations.

RESPONSE: Objection: this request is overbroad and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

20.    All Documents and Communications concerning your assertion in Paragraph 40 of your Answer that "Am Yisrael Chai" does not  "simply mean[] 'the people of Israel live.'"

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

21.    All Documents and Communications concerning the "conduct" that you allege Mr. Radice was engaged in in Paragraph 74 of your Answer.

RESPONSE: Objection: Paragraph 74 of the Answer does not relate to conduct that Defendant alleges Mr. Radice was engaged in.

22.    All Documents and Communications concerning your assertion in Paragraph 82 of Your Answer that Mr. Radice was not "attempt[ing] to purchase a cookie" when he visited JCH on August 3, 2024.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

23.    All Documents and Communications concerning your assertion in Paragraph 83 of your Answer denying that "Defendants refused to serve Mr. Radice" on August 3, 2024.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

24.    All Documents and Communications concerning the affirmative defense in your Answer stating that Mr. Radice is "barred from equitable relief by the doctrine of unclean hands."

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld.

25.    Documents and Communications sufficient to identify your assets—including but not limited to bank accounts, real estate, and personal property—and the value thereof.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges. Further, this request is not relevant to any party's claim or defense or proportional to the needs of the case such that Defendant will not produce any responsive records.

26.    All leases of real property by you.

RESPONSE: Objection: this request is overbroad and not relevant to any party's claim or defense or proportional to the needs of the case such that Defendant will not produce any responsive records.

27.    All of your sales records for July through December 2024.

RESPONSE: Objection: this request is vague, overbroad and not relevant to any party's claim or defense or proportional to the needs of the case such that Defendant will not produce any responsive records.

28.    All Documents and Communications concerning your document retention policies.

RESPONSE: Objection: this request seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which no records are withheld.

29.    To the extent not otherwise requested above, all additional Documents and Communications containing information relevant to the claims and issues in this Action, including but not limited to all Documents not previously requested that You intend to introduce as exhibits at a hearing and/or trial or during any deposition conducted in this matter.

RESPONSE: Objection: this request is vague, overbroad, and seeks records protected against disclosure by the attorney-client and attorney work-product privileges, upon which records are withheld

## REQUESTS FOR ADMISSION

1.    Admit that Mr. Harara formed JBC in February 2023.

RESPONSE: Admit

2.    Admit that Mr. Harara was the Chief Executive Officer of JBC from at least July 10, 2024 through August 3, 2024.

RESPONSE: Admit

3.    Admit that Mr. Harara was the sole member of JBC from at least July 10, 2024 through August 3, 2024.

RESPONSE: Admit

4. Admit that Mr. Harara was the sole manager of JBC from at least July 10, 2024 through August 3, 2024.

RESPONSE: Admit

5. Admit that Mr. Harara is currently the Chief Executive Officer of JBC.

RESPONSE: Admit

6. Admit that Mr. Harara is currently the sole member of JBC.

RESPONSE: Admit

7. Admit that Mr. Harara is currently the sole manager of JBC.

RESPONSE: Admit

8. Admit that JBC is a "wellness" business.

RESPONSE: Admit

9. Admit that JBC is not a "wellness" business.

RESPONSE: Deny

10. Admit that JBC had revenues in 2024.

RESPONSE: Admit

11. Admit that JBC had revenues in 2025.

RESPONSE: Admit

12. Admit that JBC operates JCH.

RESPONSE: Admit

13. Admit that written policies and procedures govern JCH's operations.

RESPONSE: Deny

14. Admit that JCH has employees.

RESPONSE: Admit

15. Admit that JCH has written policies and/or procedures governing employee conduct.

RESPONSE: Deny

16. Admit that all of JBC's 2024 revenues came from JCH's operations.

RESPONSE: Objection: this request is not relevant to any party's claim or defense or

DEFENDANT JERUSALEM BOXING CLUB, LLC'S RESPONSE TO MICHAEL RADICE'S FIRST SET OF REQUESTS Case No. 3:25-cv-02060-SI Page 8

proportional to the needs of the case.

17.    Admit that all of JBC's 2025 revenues came from JCH's operations.

RESPONSE: Objection: this request is not relevant to any party's claim or defense or proportional to the needs of the case.

18.    Admit that any portion of JBC's 2024 revenues came from something other than JCH's operations.

RESPONSE: Objection: this request is not understandable and is not relevant to any party's claim or defense or proportional to the needs of the case.

19.    Admit that any portion of JBC's 2025 revenues came from something other than JCH's operations.

RESPONSE: Objection: this request is not understandable and is not relevant to any party's claim or defense or proportional to the needs of the case.

20.    Admit that JBC has a business relationship with Native Grounds.

RESPONSE: Objection: vague. Subject to that objection, deny.

21.    Admit that JBC has no business relationship with Native Grounds.

RESPONSE: Objection: vague. Subject to that objection, admit.

22.    Admit that Mr. Harara operates JCH.

RESPONSE: Admit

23.    Admit that Mr. Harara holds himself out to be the proprietor of JCH.

RESPONSE: Admit

24.    Admit that on or about July 10, 2024, a JCH employee observed Mr. Radice walking along the sidewalk outside JCH.

RESPONSE: Admit

25.    Admit that on or about July 10, 2024, a JCH employee observed Mr. Radice wearing a hat with a Star of David emblazoned on it.

RESPONSE: Admit

26.    Admit that the employee who observed Mr. Radice walking along the sidewalk outside JCH on or about July 10, 2024 saw the hat Mr. Radice was wearing with a Star of David

emblazoned on it.

RESPONSE: Admit

27.    Admit that the employee who observed Mr. Radice walking along the sidewalk outside JCH on or about July 10, 2024 believed that Mr. Radice was Jewish.

RESPONSE: Deny

28.    Admit that JCH offered beverage items for sale to the public in August 2024

RESPONSE: Admit

29.    Admit that JCH currently offers beverage items for sale to the public.

RESPONSE: Admit

30.    Admit that JCH has offered beverage items for sale to the public at all times since its opening.

RESPONSE: Admit

31.    Admit that JCH offered food items for sale to the public in August 2024.

RESPONSE: Admit

32.    Admit that JCH currently offers food items for sale to the public.

RESPONSE: Admit

33.    Admit that JCH has offered items for sale to the public at all times since its opening.

RESPONSE: Admit

34.    Admit that JCH's menu included food items for sale to the public in August 2024.

RESPONSE: Admit

35.    Admit that JCH's menu currently includes food items for sale to the public.

RESPONSE: Admit

36.    Admit that JCH's menu has included food items for sale to the public at all times since its opening.

RESPONSE: Deny

37.    Admit that JCH's food offerings in August 2024 included items such as focaccia, muffins, and cookies.

RESPONSE: Admit

38.    Admit that JCH's food offerings currently include items such as focaccia, muffins, and cookies.

RESPONSE: Admit

39.    Admit that JCH's food offerings have included items such as focaccia, muffins, and cookies at all times since its opening.

RESPONSE: Deny

40.    Admit that JCH's menu was publicly accessible on Instagram in August 2024.

RESPONSE: Admit

41.    Admit that JCH's menu is currently publicly accessible on Instagram.

RESPONSE: Admit

42.    Admit that JCH's menu has been publicly accessible on Instagram at all times since its opening.

RESPONSE: Admit

43.    Admit that JCH's menu was publicly accessible on Facebook in August 2024.

RESPONSE: Deny

44.    Admit that JCH's menu is currently publicly accessible on Facebook.

RESPONSE: Deny

45.    Admit that JCH's menu has been publicly accessible on Facebook at all times since its opening.

RESPONSE: Deny

46.    Admit that JCH's menu is currently publicly accessible on X (formerly known as "Twitter").

RESPONSE: Deny

47.    Admit that JCH's menu has been publicly accessible on X (formerly known as "Twitter") at all times since its opening.

RESPONSE: Deny

48. Admit that on July 10, 2024, JCH sold food items.

RESPONSE: Admit

49. Admit that on August 3, 2024, JCH sold food items.

RESPONSE: Admit

50. Admit that during the Fall of 2024, the "Sweet Sinwar" drink appeared on JCH's menu.

RESPONSE: Admit

51. Admit the name "Sweet Sinwar" used for the drink offered at JCH during the fall of 2024 referred to Yahyah Sinwar.

RESPONSE: Admit

52. Admit that, to the best of your understanding, Yahya Sinwar was the leader of Hamas in 2023.

RESPONSE: Deny

53. Admit that during the fall of 2024, JCH offered a drink named the "Iced In Tea Fada."

RESPONSE: Admit

54. Admit that the menu item "Iced in Tea Fada" refers to the term "intifada."

RESPONSE: Admit

55. Admit that JCH's menu and building featured inverted red triangles.

RESPONSE: Admit

56. Admit that on or about October 7, 2024, the version of JCH's menu that featured the "Iced In Tea Fada" and "Sweet Sinwar" drinks also included inverted red triangle symbols.

RESPONSE: Admit

57. Admit that on or about October 29, 2024, Mr. Harara called the police to remove Jonathan Hirsch from JCH.

RESPONSE: Deny

58. Admit that Jonathan Hirsch was wearing a hat with a white Star of David while he was in JCH on or about October 29, 2024.

RESPONSE: Deny

59.    Admit that Jonathan Hirsch was wearing a hat with a white Star of David when Mr. Harara called the police to remove him from JCH on or about October 29, 2024.

RESPONSE: Deny

60.    Admit that Mr. Harara asked Jonathan Hirsch to leave JCH several times during his visit on or about October 29, 2024.

RESPONSE: Deny

61.    Admit that Jonathan Hirsch's hat was at least one of the reasons he was asked to leave JCH during his visit on or about October 29, 2024.

RESPONSE: Deny

62.    Admit that Jonathan Hirsch's hat is what triggered Mr. Harara's confrontation with Mr. Hirsch during Mr. Hirsch's visit to JCH on or about October 29, 2024.

RESPONSE: Deny

63.    Admit that Mr. Harara was acting as JCH's owner when he confronted Mr. Hirsch in JCH on October 29, 2024.

RESPONSE: Deny

64.    Admit that Mr. Harara was acting as JCH's operator when he confronted Mr. Hirsch in JCH on October 29, 2024.

RESPONSE: Deny

65.    Admit that the Star of David is a widely recognized Jewish symbol.

RESPONSE: Admit

66.    Admit that Mr. Harara called Jonathan Hirsch's hat "a violent hat" during Mr. Hirsch's visit to JCH on or about October 29, 2024

RESPONSE: Deny

67.    Admit that when Mr. Harara described Jonathan Hirsch's hat as a "violent hat" during his visit to JCH on or about October 29, 2024, he was referring to the Star of David symbol featured on that hat.

RESPONSE: Deny

68.    Admit that on October 29, 2024, Mr. Harara told Jonathan Hirsch, "Get out of my business. ... This hat is a violent hat, and you need to leave."

RESPONSE: Deny

69.    Admit that on October 29, 2024, Jonathan Hirsch told Mr. Harara that he could not kick someone out of the establishment only because of the religious symbol on the hat.

RESPONSE: Deny

70.    Admit that on October 29, 2024, Mr. Harara responded to Mr. Hirsch's assertion that he could not kick someone out of JCH only because of the religious symbol on his hat by saying, "Yeah, I can. It's my business."

RESPONSE: Deny

71.    Admit that on October 29, 2024, Mr. Harara asked Jonathan Hirsch if he was a Zionist multiple times.

RESPONSE: Deny

72.    Admit that a JCH employee spoke to Plaintiff outside JCH on July 10, 2024.

RESPONSE: Deny

73.    Admit that a JCH employee asked Plaintiff on July 10, 2024 whether he was a Zionist.

RESPONSE: Deny

74.    Admit that one of the JCH employees who spoke to Plaintiff outside JCH on July 10, 2024 was Gabriel Garay.

RESPONSE: Deny

75.    Admit that Mr. Harara spoke to Plaintiff outside JCH on July 10, 2024.

RESPONSE: Deny

76.    Admit that Plaintiff visited JCH on August 3, 2024.

RESPONSE: Admit

77.    Admit that Mr. Harara was working at JCH on August 3, 2024.

RESPONSE: Deny

78.    Admit that on August 3, 2024, Plaintiff approached the counter at JCH.

DEFENDANT JERUSALEM BOXING CLUB, LLC'S RESPONSE TO MICHAEL RADICE'S FIRST SET OF REQUESTS Case No. 3:25-cv-02060-SI                              Page 14

RESPONSE: Deny

79.    Admit that on August 3, 2024, in addition to Plaintiff and Mr. Harara, at least two other JCH employees were present inside JCH, and both were known by Mr. Harara.

RESPONSE: Deny

80.    Admit that Mr. Harara asked Plaintiff—on August 3, 2024—whether he was a Zionist.

RESPONSE: Admit

81.    Admit that Plaintiff expressed his intention to make a purchase from JCH during his visit to JCH on August 3, 2024.

RESPONSE: Deny

82.    Admit that when Mr. Radice visited JCH on or about August 3, 2024, he ordered a food item.

RESPONSE: Deny

83.    Admit that on August 3, 2024, food items were visibly displayed and could be seen by customers standing at the counter inside JCH.

RESPONSE: Admit

84.    Admit that on August 3, 2024, JCH offered food items available for sale to the public.

RESPONSE: Admit

85.    Admit that an employee of JCH recognized Plaintiff during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Admit

86.    Admit that an employee of JCH commented on Plaintiff's Jewish identity during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Deny

87.    Admit that Mr. Harara asked the Plaintiff to leave JCH before the Plaintiff purchased anything during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Deny

88.     Admit that Mr. Harara asked the Plaintiff to leave JCH before fulfilling Plaintiff's request to purchase food during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Deny

89.     Admit that when Plaintiff visited JCH on or about August 3, 2024, JCH employees did not provide him with a food item.

RESPONSE: Admit

90.     Admit that when Plaintiff visited JCH on or about August 3, 2024, at least one of JCH employees believed that Mr. Radice identified as Jewish.

RESPONSE: Deny

91.     Admit that when Plaintiff visited JCH on or about August 3, 2024, at least one of JCH employees believed that Mr. Radice had Jewish ancestry.

RESPONSE: Deny

92.     Admit that when Plaintiff visited JCH on or about August 3, 2024, at least one of JCH employees believed that Mr. Radice practiced Judaism.

RESPONSE: Deny

93.     Admit that when Plaintiff visited JCH on or about August 3, 2024, JCH employees refused to serve Mr. Radice.

RESPONSE: Deny

94.     Admit that when Plaintiff visited JCH on or about August 3, 2024, at least one of JCH employees instructed Mr. Radice to leave JCH.

RESPONSE: Deny

95.     Admit that Mr. Harara asked the Plaintiff to leave before the Plaintiff could purchase anything during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Deny

96.     Admit that an employee of JCH other than Mr. Harara told the Plaintiff to leave before he could make a purchase during Plaintiff's visit to JCH on August 3, 2024.

RESPONSE: Deny

/s/ Glenn Katon
Glenn Katon

ATTORNEY FOR DEFENDANTS JERUSALEM BOXING CLUB, LLC, NATIVE GROUNDS, INC., and ABDULRAHIM HARARA

CERTIFICATE OF SERVICE

I certify that I served the foregoing document by email to the following email addresses on the date indicated below: DHopkins@beneschlaw.com, MMeuti@beneschlaw.com, jpasch@adl.org, clarimer@adl.org, bhogan@adl.org

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 14, 2025.

/s/ Glenn Katon
Glenn Katon

# Exhibit F



DEFS0325

# Exhibit G



DEFS0279



With sound 😂😂😂

Fuck israel fuck zionists TIKKUN OLAM REPAIR THE WORLD STARTS WITH GETTING RID OF ZIONISM

B***h (in Arabic)

DEFS0280



DEFS0281



This dude Jonathan idk what his last name is ... tried to pull up to our space yesterday antigonize, yell, and disrupt our customers. He used derogatory language that was sexually explicit, in front of his own children! zionists are nasty people, and they need to be dealt with in a nasty manner. Don't take the high road with these hellish creatures of the underworld. Wipe the floor with them and humiliate them.

DEFS0282

# Exhibit 2



Gabril Garay                                                    11/24/25

Website: Tyler the Creator and Pharrell Sample Israeli Musician on New Album! : r/Jewish (reddit.com)

Tarah Lim                                                       9/28/25

Website: Jerusalem Coffee House on Instagram: "We would like to thank everyone who made it to People's Press Conference a couple weeks ago - its powerful to see people resist zionist propaganda through thinking critically and understanding what the essence of JCH is and what it will always remain.

Exhibit

2

Harara

03/25/2026    C.A.N.

DEFS0299



+1 (415) 416-5075                                                8/13/25

We we would thank everyone who made it to People's Press Conference a couple weeks ago - its powerful to see people resist zionist propaganda through thinking critically and understanding what the essence of JCH is and what it will always remain. عبد الحقّ. or simply, Truth.   Our Statement is i

We we would thank everyone who made it to People's Press Conference a couple weeks ago - its powerful to see people resist zionist propaganda through thinking critically and understanding what the essence of JCH is and what it will always remain. عبد الحقّ. or simply, Truth.   Our Statement is i

DEFS0300



@abc7newsbayarea on Instagram: "The U.S. Department of Justice...

instagram.com

I liked it but now I can't find it

Sun, Jun 22 at 8:59 PM

DEFS0301



DEFS0302



DEFS0303



DEFS0304



DEFS0305



DEFS0306



DEFS0307

You need to move more tact for the sake of your safety and your family, you're not the only one named Harara

There's nothing wrong with kicking ppl out if they refuse to admit to Zionism

Jews come in our space all the time

I moved very tactfully here lol I was aggressive w him but I'd rather that than allow them grace to continue doing what they do

But I'm tappin in because I have my own footage that should be edited and spliced. That shows his intentions etc. was tappin in because i thought it would be dope to edit it w you

DEFS0308



DEFS0309



DEFS0310



DEFS0311



DEFS0312



DEFS0313



DEFS0314

Sat, Apr 12 at 6:49 PM

Also lmao I just read this .. no alhamduillah that don't mean nothing off... only if his politics was more worse. Alhamduillah he's pretty engaged and the family are strong anti zonist and you know he shared his opinion on what it's like to be an anti zionist when he spoke that it shouldn't be a savior idenity etc. his son is 13 and already working on strategies to not serve I think they're going to give up his citizenship and live in the uk. And truly that is how you reclaim Judaism from zionism.

DEFS0315



DEFS0316



DEFS0317



DEFS0318



DEFS0319

+1 (510) 850-3502                                            9/28/25

I fucked up my Jesus year being in court with these punk ass zionists

Chillin man living maintaining ... I haven't tapped in with you in a minute and I wanna apologize... you know I've been building Jerusalem coffee house and we've been facing intense Zionist harassment so we're putting together a benefit show at 1308 Broadway w ovrkast, mavi, and some poets. I would be grateful to have you in the space July 26 from 5-10 you'll have about 30 minutes... do you have capacity for this rn?

DEFS0320



DEFS0321



DEFS0322



DEFS0323

Crazy bro, you have to play it smart. Smile on their face and let them touch you

But hell yeah fuck him! Good job for standing up bro!!

You're right bro buy this dude was outside yelling at me trying to get my attention and I walked all the way inside and in the back area where it's employees only that's why I'm in that door and all that happened when o was on the phone with a lawyer. Yes i should keep my cool but I cannot engage with these scum politely. They're hateful Zionists who are looking for a fight.

Dec 25, 2024 at 2:21PM

Assalam was alaikum bro

You want to pick
Up the fox this weekend?

DEFS0324



DEFS0325



DEFS0326



DEFS0327



DEFS0328

Oct 30, 2024 at 12:33 PM

Hey friends good afternoon!

Wanted to see if we can hop on a call later this evening around 7?

There's been a lot of zionist agitation and we're working on bringing out a lot of our community to uplift our people and respond as a community that rejects Zionism. Would love to chat with y'all about how we envision JVP holding space with us!

Savannah                                        7/27/24

He came to our panel today on Zionism and fascism !

DEFS0329



On October 29, a man in Oakland, California was kicked out of the Jerusalem Coffee House by the owner for wearing a blue baseball cap with a white star of David on it. Police are now investigating the incident as an antisemitic hate crime. Was it antisemitic to ask this man to leave? Maybe. Yet no one is asking a bigger question about this incident- why did this man feel it appropriate to walk into a Palestinian coffee shop wearing a hat so closely mirroring the flag of Israel? Did he not expect to elicit a visceral response from the very people being slaughtered in the name of this flag? Do Palestinians who have watched the death and destruction of their homeland carried out under this symbol not have the right to be offended by it?

Sun, Feb 23 at 5:14 PM

iMessage

DEFS0330



DEFS0331



DEFS0332



DEFS0333



DEFS0334



DEFS0335



DEFS0336



DEFS0337



DEFS0338



DEFS0339



DEFS0340

Sat, Aug 2 at 11:36 AM

Just a small correction, the individuals names in the lawsuits were never denied service. One of them was even served an Oat Latte. They were both asked to leave because they were being disruptive, and disturbing customers. The inconsistencies and false truth about their narrative are plenty. Their lack of concern to honestly inform the public of the true narrative is a political ploy to continue to fan the flames of antisemitism. Yes you read that right, the adl, bc, and DOJ are all pushing this false narrative of "denial of service" to further stoke the flames of antisemitism. It playa into their political strategy of demonizing and criminalizing anything that represents Palestinian liberation including Jerusalem coffee house

DEFS0341



DEFS0342



DEFS0343



DEFS0344



DEFS0345



DEFS0346



DEFS0347