Michael D. Meuti (CA 227939)
David M. Hopkins (*Admitted Pro Hac Vice*)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216.363.4500
mmeuti@beneschlaw.com
dhopkins@beneschlaw.com

Corena G. Larimer (CA 277188)
ANTI-DEFAMATION LEAGUE
40 Court Street, Suite #12
Boston, MA 02108
Telephone: 212.885.7700
clarimer@adl.org

James Pasch (*Admitted Pro Hac Vice*)
Brendan Hogan (*Admitted Pro Hac Vice*)
ANTI-DEFAMATION LEAGUE
605 Third Avenue
New York, NY 10158
Telephone: 212.885.7700
jpasch@adl.org
bhogan@adl.org

*Attorneys for Plaintiff Michael Radice*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MICHAEL RADICE,<br><br>Plaintiff,<br><br>v.<br><br>JERUSALEM BOXING CLUB, LLC;<br>NATIVE GROUNDS, INC.;<br>ABDULRAHIM HARARA; DOES 1-20<br><br>Defendants. | Case No. 3:25-cv-02060<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL**<br><br>Date: June 26, 2026<br>Time: 10:00 a.m.<br>Place: 450 Golden Gate Avenue<br>San Francisco, CA 94102<br>Judge: Susan Illston<br><br>First Amended Complaint Filed: 04/15/2025 |

**NOTICE OF MOTION AND MOTION TO COMPEL**

PLEASE TAKE NOTICE that on June 26, 2026, at 10:00 a.m. or as soon thereafter as the matter may be heard at the above titled Court, located at the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Michael Radice will move this Court to compel discovery (the "Motion").

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the Declaration of Michael Meuti and all exhibits thereto; all documents in the Court's file; and on such other arguments as may be presented to the Court.

## I. INTRODUCTION

In accordance with this Court's April 7, 2026 (Dkt. 99) Order and May 18, 2026 Order (Dkt. 113), Plaintiff Michael Radice respectfully moves the Court to compel Defendants' compliance with their obligations to produce relevant, responsive ESI. Plaintiff's portion of the April 2, 2026 Joint Discovery Statement briefly described how Defendants have shirked those obligations. But the strictures of the joint-discovery-dispute process precluded Plaintiff from offering evidence beyond the relevant discovery requests and responses, and it limited Plaintiff to just a few pages to present the scope of Defendants' misconduct. A fuller record of that misconduct makes clear that the Court's April 7, 2026 Order addressing the Joint Discovery Statement, although a step in the right direction, fails to fully rectify Defendants' discovery abuses. The Court has since granted Plaintiff permission to present a more-fulsome record through a motion to compel.

## II. BACKGROUND

This case arises from a series of discriminatory incidents at Jerusalem Coffee House, a café operated by Defendant Jerusalem Boxing Club, LLC. Plaintiff Michael Radice, who is Jewish, was subjected to harassment on account of his Jewish heritage on July 10, 2024, and August 3, 2024. On the latter date, Radice was also denied service at the café. Another Jewish customer, Jonathan Hirsch, was harassed and ejected from the café because of his Jewish heritage on October 26, 2024.

Defendant Abdulrahim Harara is the sole owner of both Defendant Jerusalem Boxing Club, LLC and Defendant Native Grounds, LLC. He serves as the café's proprietor, and he is responsible for the café's day-to-day operations.

Relevant here, Plaintiff served discovery on Defendants seeking documents and communications: (1) concerning the incidents on July 10, August 3, and October 26, 2024; (2) reflecting other evidence of anti-Jewish animus, including relevant communications and social-media posts; and (3) concerning the café's finances and operations, including menu items that reflect anti-Jewish sentiments. As explained below, Defendants have refused to (a) preserve sources containing potentially responsive ESI, (b) conduct a reasonable search for responsive documents, and (c) produce responsive documents.

Beyond the meet-and-confer history detailed in prior filings (*see* Dkts. 88, 96), Plaintiff's counsel met and conferred with Defendants' new counsel on April 24, 2026, to address outstanding discovery disputes. The parties discussed a variety of issues, including (1) Defendants' deficient and unusable April 17 production, (2) Defendants' failure to properly preserve their data, (3) Defendants' procedurally and substantively deficient text message production, (4) Defendants' failure to produce responsive emails, and (5) Defendants' failure to produce responsive documents relating to their social media accounts. Attached as Exhibit C is a true and accurate copy of Plaintiff's correspondence following the April 24 meet and confer that identifies Plaintiff's concerns in depth. To date, Defendants have not provided adequate assurances that their deficiencies would be timely addressed.

Accordingly, on May 8, 2026, Plaintiff filed his motion for leave to file this motion to compel. (Dkt. 111). The parties discussed Plaintiff's request for leave and the status of discovery during this Court's May 15 status conference. (Dkt. 114). Following that conference, this Court granted Plaintiff leave to file this motion to compel. (Dkt. 113).

## III. LEGAL STANDARD

Rule 37(a)(3)(b)(iv) authorizes a motion to compel where a party fails to produce documents requested under Rule 34. Federal Rule of Civil Procedure 34 grants a party the right to serve upon any other party a request to produce certain items in the "responding party's possession, custody, or control." Following service, the party served is obligated to respond in writing within 30 days by either "stat[ing]

that inspection and related activities will be permitted as requested or… the grounds for objecting to the request." *Id.* As detailed below, Defendants have failed to properly preserve and search for various documents that Plaintiff requested in discovery, much less produce those documents.

## IV. ARGUMENT

### A. Defendants April 17 production is illegible.

On April 17, 2026, Defendants served a document production that purported to comply with the Court's April 7 Order. The production was not bates labeled, and Plaintiff could not discern how the produced documents related to previously produced discovery and thus how they complied with the April 7 Order. Accordingly, Plaintiff asked Defendants for clarification. Plaintiff's request was simple and reasonable: (1) re-produce what was sent on April 17 with Bates labels, and (2) insofar as the April 17 production is intended to update prior productions, provide a table of concordance reflecting the relationship between each page of the April 17 production and the relevant page(s) of the prior productions. *See* Ex. D. When the parties met and conferred on this issue on April 27, Defendants' new counsel stated that they could not explain what the April 17 production was or how it satisfied the Court's April 7 Order. (Meuti Decl. ¶ 10.) Plaintiff is still waiting for that explanation.

Nor has Plaintiff received bates-stamped versions of the April 17 production. Plaintiff is left in the dark as to (1) what these documents are, (2) whether they comply with the Court's April 7 order, and (3) what, if any, relevancy they have to this case. Unless the Court orders Defendants to rectify their April 17 production, the production is essentially unusable, and Defendants are presumably not in compliance with the April 7 Order.

### B. Defendants omitted text messages from the text threads they partially produced.

Defendants' text-message production is deficient. Harara produced only screenshots—not native files, not complete threads, but selectively cropped images showing isolated messages. Harara himself decided which messages to include and which to omit. At his deposition, he described his selection process: he ran keyword searches in his iMessage app, took screenshots of either the search results or portions of text threads, and deliberately omitted texts that Plaintiff's counsel "probably don't need." Ex.

B at 378:4-16.[1]

On at least one occasion, Harara went further, digitally scribbling over portions of a message to redact it before production.




Ex. 3 at DEFS0374. He explained that he did so because he determined that Plaintiff is "not at liberty to see what's in that message." Ex. B at 455:14-456:2.

As an initial matter, courts routinely hold that producing screenshots is incompatible with a party's production obligations. *E.g.*, *Pso-Rite.com LLC v. Thrival LLC*, No. 1:21-cv-00775-PAB-STV, 2025 WL 3899841, at *2 (D. Colo. Dec. 23, 2025) (ordering forensic imaging of devices with discoverable text messages after finding that "[p]roducing screenshots of text messages without sender, recipient, or date and time stamp information, or related metadata, is an impermissible 'document dump.'"); *Laub v. Horbaczewski*, 331 F.R.D. 516, 528 (C.D. Cal. 2019) (ordering production of "text messages either in … spreadsheet form … or, alternatively, in an otherwise mutually agreeable usable format that preserves the integrity of the threads of communication reflected in the text messages"); *see also id.* (collecting cases addressing text-message-production format). As the *Laub* court noted, "a party who responds to a discovery request by simply producing electronically stored information in a form of its choice, without first discussing the form with the requesting party, 'runs a risk that the requesting party can show that the

[1] Exhibits A and B are excerpts of Harara's deposition transcript. Numbered exhibits reflect the exhibit numbers used during the deposition.

produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form.'" *Id.* at 527 (quoting Fed. R. Civ. P. 34 advisory committee's notes to 2006 amendment). Defendants' production is thus facially deficient.

But beyond the problems with the production format, the self-serving process that Defendants followed predictably excluded responsive communications. Consider the scope of Plaintiff's discovery requests. RFP 2 seeks "All Documents and Communications concerning [Harara's] interaction with Jonathan Hirsch on October 26, 2024." Dkt. 96-1 at 2. RFP 23 seeks "Documents and Communications containing information relevant to the claims and issues in this Action." Dkt. 96-1 at 6. These are not the only relevant requests, but they illustrate some of what Defendants were obligated to produce. As described below, comparing these straightforward requests to what Defendants actually produced underscores the magnitude of what they withheld.

The examples of Harara's selective production are numerous. DEFS0303–304 are screenshots of the results of a search that Harara ran in iManage. Rather than produce the actual text threads, he merely took screenshots of the search results. Ex. B at 363:20-368:1, 374:9-19, 377:11-17. Those search "hits" show that Harara forwarded a jweekly.com article about the Hirsch incident to at least seven people. But because he produced only screenshots of the search results, and not the actual text threads, he withheld all adjacent messages:






Any responses to those messages would be responsive to RFPs 2 and 23 at minimum (and likely to other requests as well). Messages preceding the link may also be responsive. But Harara chose to exclude them.

DEFS0310–311 tell a similar story. Those pages reflect screenshots of another iMessage search, with the text threads—and thus all adjacent messages to the texts that "hit" on the search term—withheld. *See* Ex. 2 at DEFS0310-11. They show that Harara sent at least six people a link to a *Jewish Telegraphic Agency* article about a menu item praising Hamas leader Yahya Sinwar.






Surrounding messages are almost certainly responsive to RFP 23 and to RFPs 7, 8, and 9, which seek documents concerning the café's menu. *See* Dkt. 96-1 at 3. Harara excluded them. *See also* Ex. 3 at DEFS0359. Similarly, DEFS0363 is a screenshot of a text Harara sent, forwarding a different article about the menu items. *Id.* at DEF0363. The recipient responded, "Are you gonna do something?" The screenshot cuts off there. Harara's response—almost certainly responsive to RFP 23—is missing because he chose to end the screenshot after that message.

These are far from isolated incidents. The record is replete with text messages produced as truncated search-term hit results, with surrounding messages in the threads omitted. Indeed, Harara testified that because he chose to take screenshots search of results, rather than of the text-conversation threads, at least 81 text messages were produced without any adjacent messages from the relevant threads. Ex. B at 377:19-392:8. The production is akin to receiving one message plucked from the middle of a lengthy email chain, with the related messages before and after cropped out.

Harara's production also contains texts that are simply incomplete. DEFS0325 is a screenshot of what appears to be a conversation with Jerusalem Coffee House's landlord, evidently in response to media attention generated by the Hirsch incident. Ex. 2 at DEFS0325.




The screenshot picks up mid-conversation, omitting the text that initiated the exchange. It also omits at least part of one of Harara's own messages. All those omitted communications are responsive to RFP 23. And DEFS0325 may omit further responsive messages; because Harara chose to produce screenshots and chose where to start and stop them, we simply cannot tell. (Notably, DEFS0325 references an email that the other party sent to Harara, evidently containing a video of the Hirsch incident. Harara produced neither the email nor the video.) DEFS0314 suffers from the same problem—the sole text message in that screenshot is cut short with ellipses at both the beginning and end. Ex. 2 at DEFS0314.[2]

In another example, DEFS0318 contains a text reading only "fuck the zionist." *Id.* at DEFS0318. Harara omitted any adjacent messages that would shed light on how that text relates to this case—including whether he was referring to one of the Jewish customers he refused to serve, and what else he may have said or been told.

Defendants may attempt to justify their approach, contending that they cropped out (or in the case

[2] Defendants' production also raises the specter that texts may have been deleted. For instance, DEFS0366 is a screenshot of a text thread between Harara and a friend Muhammad, who he described as "somebody [he] confide[s] in and ha[s] love for." Ex. B. at 464:18-20. In the screenshot, Harara tells Muhammad on April 4 that he was being sued—significant news. But the screenshot reflects no response from Muhammad for at least six months.

of DEFS0374, redacted) information that Harara unilaterally deemed was not relevant. Courts frown upon that approach. *Durling v. Papa John's Int'l, Inc.*, No. 16 Civ. 3592 (CS)(JCM), 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018) ("redactions on grounds of non-responsiveness or irrelevance are generally impermissible") (citing *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("[Redactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege.")); *Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Grp.*, No. SA CV 15-00246-DOC (DFMx), 2016 WL 6246384, at *2 (C.D. Cal. Feb. 23, 2016) ("[the defendant] may not redact otherwise responsive documents because those documents contain irrelevant material"); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, Nos. 08 md 1945(RJH)(DFE), 08 Civ. 0333(RJH)(DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (directing parties not to "redact any portion of a document on the ground that the portion is non-responsive and irrelevant" because such redactions "breed suspicions" and "may deprive the reader of context")).

The Court's Order does not remedy these deficiencies—it cements them in place. The Order requires Harara only to add date, time, recipient, and sender information to the numerous screenshots from which he cropped out that information. *See* Ex. B at 462:9-19 (confirming that he cropped out a counterparty's identity).] The Order is thus a step in the right direction. But it does not reach any of the responsive text messages that Harara deliberately omitted from his production. Unless the Court orders a more comprehensive remedy, those messages will remain hidden.

**C. Harara failed to produce responsive emails.**

Harara claims that he searched his email and indeed produced emails. Ex. B at 396:7-397:11 (concluding with "So I produced E-mails.").] Yet Plaintiff has received none, which casts doubt on whether any search took place. But if Harara did search his email accounts, whatever search he conducted was plainly inadequate. Harara testified that JBC's business records "probably" exist in his email accounts. Ex. A at 147:2-13. He testified that the café's lease is "probably somewhere in [his] email." *Id.* at 119:3-16. That lease is squarely responsive to RFP 26, which Plaintiff served on JBC. Ex. E at 26. Harara has not produced it.

The Court's Order requires Harara to produce all responsive emails or, if none exist, to declare

under penalty of perjury that he searched for responsive electronic materials and found nothing. Harara's declaration says that he has searched for responsive emails but has none. Dkt. 105 ¶ 6. That declaration is not credible. Harara's own testimony confirms that responsive documents exist in his email. A text screen shot that he produced confirms that he received responsive emails. *See* Ex. F at DEFS0325. The Court should order Harara to conduct a proper, verifiable search, overseen by his new counsel—or better yet, order a forensic preservation and examination of his email accounts to ensure that Plaintiff receives the documents to which he is entitled.

**D. Defendants failed to produce social-media posts or guard against spoliation.**

Harara maintains multiple social-media accounts. Yet he produced virtually nothing from them—zero Twitter posts, zero Facebook posts, and perhaps four Instagram posts (though it is unclear whether those are even Instagram posts). Ex. G at DEFS0279–282. This is not a case where social media is tangential to the claims. RFP 11 specifically seeks "All Documents and Communications concerning any social-media posts by you." Harara's social-media accounts contain posts that are plainly responsive to that request and others. For example, Exhibit 48 is a publicly available post about the café's menu, containing an image of the menu. It is responsive to RFPs 7–9 and 23. Harara never produced it.




His failure to preserve his social-media accounts and to produce responsive documents from them are doubly concerning in light of the apparent spoliation that has already occurred. During a January 9,

2026 meet-and-confer, Defendants' then-counsel represented that Defendants' social media contained no relevant responsive documents. (Meuti Decl. ¶ 11.) Plaintiff's counsel asked whether it was really his position that Harara's Twitter feed did not contain a post reading: "Jonathan Hirsch is a genocidal, bottom dwelling Zionist scum and should be kicked out of every public establishment not just Palestinian owned ones!" (Meuti Decl. ¶ 12.) Of course, Harara's Twitter feed contained that exact post. Ex. 41. Defendants' counsel said he did not know but would ask his client. (Meuti Decl. ¶ 12.) Plaintiff's counsel responded that if counsel had been trusting his client without independently verifying what he was told, that approach was not working—and counsel was falling short of his professional obligations. (*Id.*)

The following week, the post disappeared from Harara's public Twitter feed. (Meuti Decl. ¶ 13.) Plaintiff's counsel preserved a copy of Harara's Twitter feed on January 15, 2026. (*Id.*) The "Zionist scum" post was gone. Ex. 39. Harara confirmed at his deposition that the post did not appear on his Twitter feed on that date. Ex. B at 409:2–410:1; *see also id.* at 401:2-24 (authenticating Ex. 39). Only after Plaintiff's counsel raised the evident spoliation with Defendants' then-counsel did the post reappear. (Meuti Decl. ¶ 14) It is unclear whether additional posts have been taken down.

Given this history, in the Joint Discovery Statement, Plaintiff asked the Court to order forensic preservation of Harara's social-media accounts and electronic devices. The Court declined. Instead, it ordered Harara to submit a declaration that he did not delete any social-media posts and would not do so in the future. Harara did so. Dkt. 105 ¶ 7. That remedy is inadequate in light of the evidence showing Defendants' disregard of their discovery obligations. A declaration from Harara—whose post vanished from Twitter days after Plaintiff's counsel flagged it—provides no meaningful protection against further spoliation. And it does nothing to address Harara's wholesale failure to produce responsive social-media posts in the first place.

## V. CONCLUSION

This record shows that the Court's Order based upon the limited Joint Discovery Statement is not proportionate to the magnitude of those abuses. Stronger medicine is necessary. Specifically, the Court must order (1) a forensic preservation of Harara's electronic devices and social-media accounts, (2) a review of the preserved data by Defendants' new counsel to identify responsive, discoverable documents,

and (3) the production of these identified documents (including the missing documents and information identified above) in an appropriate format. Anything less than these measures will result in a trial conducted with an incomplete evidentiary record—an unacceptable outcome in any matter, much less in this case, where critical evidence has plainly been withheld.

Dated: May 20, 2026

Respectfully submitted,

<u>*/s/ Michael D. Meuti*</u>

MICHAEL D. MEUTI (CA 227939)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216-363-4500
mmeuti@beneschlaw.com

*Attorney for Plaintiff Michael Radice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 20th day of May 2026, the foregoing document was served on Defendants' counsel of record through the Court's CM/ECF system.

Dated: May 20, 2026

Respectfully submitted,

*/s/ Michael D. Meuti*

MICHAEL D. MEUTI (CA 227939)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216-363-4500
mmeuti@beneschlaw.com

*Attorney for Plaintiff Michael Radice*