Ramsey Judah
Judah Law Group, LC
1026 Foothill Blvd
Upland, CA 91786
(626) 899-7667
ramsey@JudahLawGroup.com

Jonathan Wallace (Admitted Pro Hac Vice)
PO #728
Amagansett, NY 11930
(917) 359-6234
jonathan.wallace80@gmail.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**CALIFORNIA NORTHERN DISTRICT**

**OAKLAND DIVISION**

| | |
|---|---|
| MICHAEL RADICE,<br><br>Plaintiff,<br><br>vs.<br><br>JERUSALEM BOXING CLUB, LLC, *et al*<br><br>Defendants | **Case No(s).: 3:25-cv-02060-SI and 3:25-cv-04849**<br><br>**ATTORNEY JONATHAN WALLACE'S NOTION OF ADMINISTRATIVE MOTION TO WITHDRAW; MOTION TO WITHDRAW; WALLACE'S DECLARATION**<br><br>**Judge: Honorable Judge Susan Illston**<br>**Date: September 18, 2026** |

**NOTICE OF MOTION TO WITHDRAW REPRESENTATION**

TO PLAINTIFF AND THEIR COUNSELS, PLEASE TAKE NOTICE that Defendant's counsel in the above-titled matter will move this Court to administratively withdraw his representation of Defendant. It can be heard as soon as the matter may be heard at the above titled Court, located at the Philip Burton Federal Building, 450 Golden Gate Ave, San Francisco, CA 94102.

This Motion to Withdraw Representation is based on this Notice and the Opposition; the Memorandum of Points and Authorities in support thereof; the Declaration of Jonathan Wallace,  and all exhibits thereto; all documents in the Court's file; and on such other arguments as may be presented to the Court.

## I. INTRODUCTION

Defendant's counsel, Jonathan Wallace, respectfully moves the Court through this Motion to Withdraw to relieve Defendant's counsel from his representation of Defendant. The reasons are outlined below.

## II. THE FACTS

I am a 72 year old retired commercial litigator now working more than full time, *pro bono,* representing people in trouble for pro-Palestinian expression, including defendants in law suits in federal and state courts alleging discrimination, violations of the Anti-Terrorism Act, the Alien Tort Claims Act, the material support laws, the Ku Klux Klan Act, defamation and other state torts. I am frequently the attorney of last resort for people who will not find a lawyer because most of the 1.4 million lawyers in America will not take these cases, while the twenty or so nationwide who will are mostly maxed out and not taking new cases. I stepped up to take Mr. Harara's case because I believed that without me, he would be forced to represent himself *pro se* after Glenn Katon moved to withdraw.

Unfortunately, this has not worked out, as the client and I have incompatible approaches which has resulted in a complete breakdown in communications. As I informed Magistrate Judge Hixson, though I was originally optimistic I could still try the case to the Court without a jury, that evaporated over the next several days when minutes before the IDC on Tuesday the client was still changing my instructions. It became absolutely and sadly clear that I cannot make any promises to this Court or to the Magistrate Judge which require the client's cooperation with confidence I can keep them, and as for promises which no longer require an active role by the client, I risk his changing his mind about commitments already made and directing me not to keep them. I simply cannot fulfill my professional role under these circumstances.

Your Honor signaled that she would be very unhappy if I moved to withdraw so close to trial. I would not do so if I thought I could still do any good. I have come to believe that the trial would be more chaotic, not less, as a result of my presence, because it is likely that Mr. Harara will be questioning and opposing me, and then the Court. Since I will not be able to manage the situation in any event, it actually would be more simple, and save time, for Your Honor to deal with him directly as you have authority over him, and I have none. Without a client willing to stand by commitments about trial strategy and tactics, I fear that the trial will take even longer, and be more complicated than it needs to, if I am present.

Local Rule 11.5 requires that I notify Mr. Harara a reasonable amount of time in advance of my intent to withdraw. Attached as Exhibit A is an email I sent him September 3rd. I informed him that if I did not have exports of several social media platforms by the next morning, I would have to withdraw. Mr. Harara did not provide the exports by the deadline. He provided only the Gmail by September 3 (keep in mind Magistrate Hixson ordered me to review these immediately following the conference on August 31, 2026 with an update on the review by September 14th; I notified the client immediately) and Mr. Harara sent the remainder of the request information right as it was due to Plaintiffs (September 9th, 10th, and 14th). I received this material too close to the IDC to review it, which is why I originally wrote the Court that I would have to withdraw. Although Mr. Harara continues to think he should not have to produce these exports, which led to the delay in receiving them, he has also ordered me not to produce them without very careful review-- which he made impossible through his delay in giving us the material.

Out of an abundance of caution, I sent Mr. Harara another email while writing this, which is attached as Exhibit B.

In other words, I do not have authority to act on Mr. Harara's behalf because of the likelihood he will change his mind and countermand any instruction I sought and thought I had received.

The Rule also requires that I notify the other parties in writing. I fulfilled this requirement with the letter to the Court filed at Document # 167 on September 11.

Mr. Harara does not trust me. I can't blame him for that; he himself will tell you he is shell-shocked by having the Anti-Defamation League, the Brandeis Center and the federal government pile on in separate lawsuits for truly minor incidents in the coffee shop. But the invariable outcome is that he and I have no relationship and are constantly at cross-purposes, and I am certain I can do no further good.

I have other considerations. First, in July, months after appearing in this case, I received a diagnosis of aortic dilation, as a result of which I am working to change my lifestyle and law practice to achieve a new normal. I have already been living with a diagnosis of coronary artery disease for some years. The exercise is to avoid activities and stresses that will encourage my heart to dilate further. Conducting a trial with my client fighting me and changing his mind would be very stressful.

Also, I am a solo practitioner with very modest resources. I tore up my credit cards and have no debt. I own my house outright. I took my social security early to do this work. There is no prospect of my being reimbursed by Mr. Harara for expenses. It will cost me at least two thousand dollars for travel to and the cheapest possible lodging in San Francisco, a very substantial sum for me.

I stand ready to comply with  Cal. Rules Prof. Conduct, rule 1.16(e)(1)'s requirement that "the lawyer promptly shall release to the client, at the request of the client, all client materials and property".

As far as I know, Mr. Harara does not consent to my withdrawal at this time.

I also wish to say that Ramsey Judah has relied on me very substantially to his detriment. He too is working *pro bono* and nothing but harm and danger has come out of his involvement in this matter. Mr. Harara never reimbursed the $1400 Ramsey laid out for my *pro hac vice* fees in the two cases. He has no civil trial experience and it was our understanding that he would merely act to move me in and then play an intermittent support role. Forcing him to try the case would be a hardship and also would be futile, as Mr. Harara does not trust him either and would push back. Under the circumstances, I would request that Your Honor not grant my motion without granting Mr. Judah's as well. In other words, the two motions should be a package, both granted or both denied.

I think the solution, the best bad choice, is for Your Honor to allow counsel to withdraw, and to postpone trial, giving Mr. Harara some time to retain other counsel (unlikely) or to appear *pro se.* I understand under those circumstances, Your Honor would not be able to retain the case, and it would be assigned to another judge. I did not personally wish that result, but I do not think it would be fair to Mr. Harara to make him try the case *pro se* in October.

## III. ANALYSIS

"The decision to permit counsel to withdraw is within the sound discretion of the trial court. ...In ruling on motions to withdraw, courts have considered, among other things, (1) the reasons withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal may cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case", *Bonilla v Am. Gen. Life Ins. Co.*, 2026 US Dist LEXIS 206368, at *2 (ND Cal Sep. 11, 2026, No. 25-cv-05203-ASK); *Laps v Leland Stanford Jr. Univ.*, 2026 US Dist LEXIS 84273 at *4 (ND Cal Apr. 16, 2026, No. 25-cv-05767-SVK) (Brandeis Center moved to withdraw due to "'fundamental disagreements' they have had and the 'irreparable rupture in the[ir] attorney-client relationship[s]'"); *Doe v Stanford Fed. Credit Union*, 2026 US Dist LEXIS 30847, at *3-4 (ND Cal Feb. 13, 2026, No.

25-cv-07241-NW) ("Plaintiffs' Counsel states that '[t]here has been an irreconcilable breakdown in the attorney-client relationship that has made continued representation ineffective,' and 'forcing continued representation could lead to ethical violations'); *Key v Microsoft Corp.*, 2025 US Dist LEXIS 214556, at *3 (ND Cal Oct. 28, 2025, No. 3:25-cv-07141-JSC) ("Good cause exists for Counsel's withdrawal from representation of Mr. Key given Counsel's attestation to the breakdown in their relationship at the mediation").

Despite the proximity to trial, this motion meets the requirements. The reasons withdrawal is sought are a fundamental, irreparable inability to act effectively for this client, as well as my own health and finances. Withdrawal will not cause prejudice to Plaintiffs precisely because my appearance at trial without authority will not ameliorate any of the problems. Withdrawal will not cause harm to the administration of justice for the same reason, as the administration of justice would, in my opinion, be made more complicated by my attempts to act at trial. Admittedly my withdrawal will delay resolution, but that is outweighed by the other factors involved.

## IV. CONCLUSION

Thus, undersigned counsel respectfully moves the Honorable Court to relive him of the duty of representation as the complete breakdown of communication, the futility of representation of a client who has not granted him any authority, his health and the certainty he will not be reimbursed for travel and lodging expense by the client make continued representation an extreme hardship.

**DATED: September 18, 2026**

*/s/ Jonathan Wallace*
JONATHAN WALLACE
Attorney for Defendant
Appearance Pro Hac Vice

**DECLARATION OF JONATHAN WALLACE**

1. I am counsel to defendant Abdelrahim Harara in this matter.

2. I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, I would competently testify to them.

3. I undertook representation of Mr. Harara because Glenn Katon was withdrawing and I was worried that, with Anti-Defamation league, Brandeis Center and the United States all piling on, Mr. Harar would not be able to find another attorney. It is part of my *pro bono* mission to seek to represent the clients no one else will.

4. Mr. Harara was also known to be a difficult client. I wrongly thought that I had the exceptional and unusual client relations skills that would lead me to succeed in representing him when others could not. I have represented many difficult clients and this is only the second time I have moved to withdraw for a complete breakdown in communications in my *pro bono* practice.

5. Mr. Harara simply has not enabled me to make commitments to this Court I can keep. He routinely delivers discovery materials at the very last minute, or says they will not download. When he delivered voluminous private messages on several social media platforms after much delay very close to the deadline and we produced them in bulk because we were unable to review them in time, Plaintiffs complained, and Mr. Harara was angry. He keeps citing that production as a reason he does not trust me, yet he also produced his Gmail and social media exports immediately before the deadline. He then ordered me to review them in full before producing them, which would take weeks beyond the court ordered deadline.

6. On each go-round, we request exports and downloads, set deadlines, plead, become peremptory, then even threaten withdrawal (Ex. A) without result, and whatever we receive is produced too late for us to effectively review it.

7. If I do not move to withdraw, I would face sanctions myself for trying to defend some of his discovery choices.

8. I also have health considerations. At the end of July, I learned that I am suffering from aortic dilation to 4.4 cm. Once it exceeds 4.5 cm (another medical approach says 5.0 cm) the diagnosis changes to "aortic aneurysm". Once it dilates, there is no scientific proof it can ever contract again. The patient takes measures involving medication, diet and exercise to stop or slow down further dilation. Trying this case under these circumstances would be very stressful for me and stress is a factor contributing to aortic dilation.

9. If this Court requests, I can provide copies of my medical chart and analysis confirming that I have this condition.

10. I also live very modestly in order to be able to carry out this practice. I own my house outright and have no mortgage, took my social security early, drive a 2014 Honda, and have no debt (I cut up all my credit cards and have debit cards only, so I live on a cash basis). Spending the thousands of dollars out of my own pocket to come to San Francisco to try this case would be a hardship. I counted on Mr. Harara advancing expenses but he has not reimbursed Ramsey.

11. Ramsey trusted me in agreeing to be local counsel on this case and I have been unable to justify that trust, as it has caused him nothing but financial loss and other risk. That is why I am asking this Court to regard our motions as linked, to grant them both or deny them both. Ramsey should not have to try this case without me.

12. I respectfully request this Court grant both motions.

**DATED: September 18, 2026**

*/s/ Jonathan Wallace*
JONATHAN WALLACE
Attorney for Defendant
Appearance Pro Hac Vice

**PROOF OF SERVICE**
**(1013A, 2015.5 C.C.P.)**

STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO

I am employed in the County of Orange, State of California, I am over the age of eighteen years and not a party to the within entitled action; my business address is 1026 Foothill Blvd Upland, CA 91786.

On **September 18, 2026**, I served the foregoing ATTORNEY RAMSEY JUDAH'S ADMINISTRATIVE MOTION TO WITHDRAW HIS REPRESENTATION on the interested parties in this action:

Abdulrahim Harara abdulrahimharara@gmail.com
Michael D. Meuti at mmeuti@beneschlaw.com
David M. Hopkins at dhopkins@beneschlaw.com
Corena G. Larimer at clarimer@adl.org
James Pasch at jpasch@adl.org
Brendan Hogan at bhogan@adl.org
Jonathan Wallace at jonathan.wallace80@gmail.com
Basrawi, Mazen (CRT) at mazen.basrawi@usdoj.gov
Yohannes Ejigu at yohannes.ejigu@usdoj.gov

| | | |
|---|---|---|
| By Mail [ ]<br>I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Whittier, California. | By Personal Service [ ]<br>I caused such envelope to be delivered by hand to the office of the addressee(s). | By Email [ X ]<br>I caused such envelope to be delivered by electronic service to the office of the addressee(s). |
| By Facsimile [ ]<br>I caused such document to be transmitted via facsimile to the above-referenced telephone number(s). | State Service [ X ]<br>I declare under penalty of perjury under the laws of the State of California that the above is true and correct. | Federal Service [ ]<br>I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. |

**DATED: September 18, 2026**

*/s/ Jonathan Wallace*
JONATHAN WALLACE
Attorney for Defendant
Appearance Pro Hac Vice

UNITED STATES DISTRICT COURT
CALIFORNIA NORTHERN DISTRICT
OAKLAND DIVISION

| | |
|---|---|
| MICHAEL RADICE,<br>Plaintiff,<br><br>vs.<br><br>JERUSALEM BOXING CLUB, LLC, ET AL,<br>Defendant | Case No.: 3:25-cv-02069 and 3:25-cv-04849<br><br>Honorable Judge: Susan Illston<br><br>ATTORNEY JONATHAN WALLACE'S ADMINISTRATIVE MOTION TO WITHDRAW HIS REPRESENTATION |

**ORDER OF THE HONORABLE JUDGE**

Upon consideration of the Respondent Counsel's Motion, it is HEREBY ORDERED that the Motion be ❑ **GRANTED** ❑ **DENIED**.

Date: ______________________________ ________________________________________

Honorable Judge Name

________________________________________

Honorable Judge Signature

Certificate of Service

This document was served by Mail Personal Service
To: Defendant Defendant's Attorney/Representative

Date: ____________________________ By: _________________________________________