United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RADICE,<br>Plaintiff,<br>v.<br>JERUSALEM BOXING CLUB, LLC, et al.,<br>Defendants. | **DISCOVERY ORDER; REPORT AND RECOMMENDATION**<br>Case No. 25-cv-02060-SI (TSH)<br>Re: Dkt. Nos. 115, 122, 124, 164, 188 |
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>FATHI ABDULRAHIM HARARA,<br>Defendant. | Case No. 25-cv-04849-SI (TSH)<br>Re: Dkt. No. 128 |

In 25-2060 Plaintiff Michael Radice moves to compel (ECF No. 115), to deem RFAs admitted (ECF No. 122), and for sanctions (ECF Nos. 124 and 188). In 25-4849, the United States moves for sanctions (ECF No. 128). In 25-2060, Defendants move for a non-waiver of objections (ECF No. 164). This order assumes familiarity with the governing legal standards and the facts of these cases.

**A. Motion for Sanctions (25-2060 ECF Nos. 124 and 188; 25-4849 ECF No. 128)**

There is no dispute that Defendant Abdulrahim Harara violated at least six discovery orders. Motion[1] at 4-7 ("Harara has flouted at least six discovery orders," and enumerating the violations); Opp. at 7 ("But the question on this motion is not whether any order was violated; it is

[1] The Court refers to ECF No. 188 in 25-2060 as "Motion" and ECF No. 204 in 25-2060 as "Opp."

whether the record as a whole shows the kind of deliberate, deceptive obstruction that makes a fair trial impossible and justifies ending the case without one.”).

Radice argues that in addition, Harara has abused the judicial process and obstructed the search for truth by lying under oath, destroying evidence, and working to hide inculpatory evidence. Motion at 7-16. Harara, while acknowledging that discovery has been strained from the outset, denies any intentional misconduct. Opp. at 4-11. On this issue, Radice fails to persuade.

The real issue is what remedy the Court should impose for the serial violations of its discovery orders. The impact of Harara’s conduct basically falls into three buckets: documents were produced late that should have been produced earlier; some document productions are incomplete; and there has been a wholesale failure to produce email. But having reviewed the voluminous evidence submitted in support of Radice’s motion for sanctions, the Court thinks truth is available to the parties, and they should go ahead and have a trial on the existing record.

Harara’s biggest failure in discovery is the nonproduction of email, and he does not have a good excuse. In many cases the total failure to produce email would justify terminating sanctions or at least adverse inference instructions. But the Court is skeptical that this is such a case. The relevant events are alleged in-person refusals to serve Radice and another individual because they are Jewish. In other words, the relevant events did not occur by email. Before email existed, public accommodation discrimination claims like this were tried the old fashioned way: The participants in the alleged events testified, and the trier of fact decided who to believe. That option is still available here.

Email is still relevant, of course, because it could contain statements about what happened, or have evidence of the defendant’s allegedly prejudicial intent. But here a lot of that type of evidence was produced in the form of Harara’s text messages and social media feeds and other electronic records. These include a statement that seems to be by Harara that seems to say he throws pennies on the ground when Jews walk by; the coffee shop menu and outdoor signage with inverted red triangles, which Radice alleges is a symbol used by Hamas to mark Israeli targets in propaganda videos; the apparent introduction on the one year anniversary of the October 7 attack of a juice item named for a mastermind of the attack; a video of Harara telling a Jewish customer

United States District Court
Northern District of California

to leave because he had "a violent hat," referring to the Star of David on the hat; and a repost by Harara to his X account bearing the "Bay Area" screen name of a November 2, 2024 post calling that same Jewish customer "a genocidal, bottom dwelling Zionist scum" who "should be kicked out of every public establishment not just Palestinian owned ones!" There are also text messages that replicate the kind of thing a plaintiff would dream of finding in a defendant's emails – and certainly at trial Radice and the United States will argue these texts are strong evidence of liability.

Radice is certainly of the view that he has uncovered good evidence, even if it was produced later than it should have been, and even though it does not include email. *See* Motion at 15 ("The 6134 Bates-labeled pages and 2474 native files that Harara produced on or after August 7 include inflammatory documents that Harara willfully withheld until after discovery closed."); *id*. ("For example, a January 3, 2025 JCH Instagram post shows JCH advertising for sale a t-shirt featuring the Jerusalem Coffee House name ringed by flags with the emblem of Hamas, a designated terrorist organization dedicated to violence against Jews and Israelis."); *id*. ("His Instagram direct-messages contain both antisemitic tropes and antisemitic slurs.").

With all this evidence, can it really be said that Harara's failings in discovery have prejudiced Plaintiffs to such an extent that a meaningful and fair trial is no longer possible? That adverse inferences are needed because there is not enough evidence for the trier of fact to reliably draw conclusions about what happened?

No. These cases are about whether a coffee shop committed discrimination, and Harara has produced enough documents that Radice and the United States have what they need to go to trial. Even with the nonproduction of email, it is not true that discovery failed or that truth cannot be ascertained. The public policy in favor of deciding cases on the merits applies here. Accordingly, the Court **RECOMMENDS** that the district judge **DENY** the request for terminating sanctions because there's just no need or basis for it. The Court **DENIES** the request for adverse inferences because it is essentially a request for a directed verdict. Each side should put on their case at trial, and truth should be determined in the normal way. There is no reason for the Court to stack the deck.

But that doesn't mean Harara escapes sanctions. He needs to pay for what he did. His

serial violations of Court orders significantly drove up Radice's cost of litigating 25-2060. Radice requests $166,500.50 against all Defendants. Motion at 24. The entity Defendants have been in default during the period of time when Harara violated the Court orders (*see* 25-2060 ECF No. 101), so are not the cause of Radice's increased legal expenses, and therefore will not be sanctioned.

Plaintiff's counsel's rates are reasonable. However, both the Benesch and ADL attorneys seek fees for work that preceded the violations of the Court orders, a problem that requires deducting about a third of the Benesch time and about a fifth of the ADL's time. That brings the total down to $118,000. In addition, even though Harara violated multiple discovery orders, it is also true that Plaintiff's counsel litigated 25-2060 with excessive ferocity. At times it seemed they were not just litigating a discrimination case but were out to destroy Harara. As a result their fees were excessive. The Court estimates that about half of the fees Radice incurred during the time when Harara was violating the discovery orders was due to the violations and the other half was for work that would have needed to be done anyway or that should not have been done at all because it was excessive. Accordingly, the Court **SANCTIONS** Harara in the amount of $59,000 and **ORDERS** him to pay that amount to Radice within 30 days.

In his opposition, Harara proposes some remedial measures. However, the Court will not adopt any of them. The proposal to remedy the lack of email production presupposes that Harara will have a lawyer to represent him. Opp. at 16 ("The full inbox Mr. Harara exported on September 3, 2026 will be reviewed by counsel, consistent with the Court's ruling that counsel rather than Mr. Harara conduct that review. That counsel will be either counsel Mr. Harara retains or volunteer limited-scope counsel appointed through the Court's Federal Pro Bono Project under General Order 25, to which Mr. Harara respectfully requests referral. Since his counsel withdrew, Mr. Harara has contacted lawyers and legal organizations and has not found a lawyer who will take his case."). However, Harara's inability to work cooperatively with two sets of counsel means this is an unrealistic proposal. And if no lawyer represents him, Harara's proposal contains no particular deadline by which emails would be produced. Opp. at 16 ("If counsel has not been retained or appointed within 30 days of the Court's order, Mr. Harara will file a status report every

14 days thereafter. In all events, the production under this paragraph will be complete within 90 days of the Court's order; if it is not, Mr. Harara will show cause why not, and the Court may then impose such further measures as it finds appropriate after notice and an opportunity to be heard.").

Harara's proposal to serve further interrogatory responses is highly unlikely to achieve anything. And there is no need for a further deposition of him; Plaintiffs' counsel can cross-examine him at trial.

**B. Motion to Compel (25-2060 ECF No. 115), Motion for Non-Waiver (25-2060 ECF No. 164)**

The Court's prior discovery orders have fully adjudicated Radice's motion to compel. Indeed, Harara's violation of those discovery orders is part of the current motion for sanctions. Accordingly, the Court terminates ECF No. 115. For similar reasons, the Court also terminates Defendants' motion for non-waiver of objections at ECF No. 164. The Court's prior discovery orders already reflect the Court's view of Defendants' objections.

**C. Motion to Deem RFAs Admitted (25-2060 ECF No. 122)**

Radice moves to have his second set of RFAs deemed admitted, on the ground that Harara did not timely respond. Harara agrees he did not timely respond, but in his opposition to the sanctions motion, he moves under Rule 36(b) to have the admissions withdrawn. Opp. at 14. Harara's motion has merit. Allowing the withdrawal would promote the presentation of the merits, and it would not prejudice Radice in maintaining the action on the merits. As noted above, Radice pursued discovery extremely aggressively in 25-2060, such that he cannot credibly claim that he forewent other discovery in reliance on the deemed admissions. Accordingly, Radice's motion to have the RFAs deemed admitted is **DENIED**, and Harara's motion to withdraw them is **GRANTED**.

**IT IS SO ORDERED AND RECOMMENDED.**

Dated: October 29, 2026

THOMAS S. HIXSON
United States Magistrate Judge